47 P.3d 1266

**STATE of Idaho,**

v.

**Jonathan A. PIERCE.**

**No. 27200.**

Court of Appeals of Idaho.

March 4, 2002.

Rehearing Denied April 10, 2002.

Review Denied June 13, 2002.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

John M. Adams, Kootenai County Public Defender; Dennis Dale Reuter, Deputy Public Defender, Coeur d'Alene, for respondent. Dennis Dale Reuter argued.

PERRY, Chief Judge.

The state appeals from an order of the district court granting Jonathan A. Pierce's motion to suppress evidence obtained during the execution of a no-knock search warrant. We reverse.

## I.

### FACTS AND PROCEDURE

On August 4, 2000, at approximately 7:00 a.m., officers executed a no-knock search warrant at premises believed to be the location of a methamphetamine lab. The search warrant authorized the officers to search the home, a barn located to the east of the home, and a stable located to the north of the barn. In addition, the search warrant authorized the officers to search certain vehicles located on the premises which were believed to be involved in transporting methamphetamine. As they approached the premises, the officers encountered Pierce standing in a driveway approximately fifteen to twenty feet from the home. The officers did not know Pierce and did not know whether Pierce was arriving at or leaving the premises. Pierce was ordered to get down on the ground and was handcuffed. During the search of the premises, items consistent with the production of methamphetamine were found inside the home and barn. The lead investigating officer found documents containing Pierce's name on them in the barn, and the officer noted that the barn contained a living area. Approximately ten minutes after Pierce was handcuffed, the officer contacted Pierce and observed that Pierce had orangish-brown stains on his hands. The officer also smelled an odor on Pierce that the officer associated with the processing of methamphetamine. Pierce was placed under arrest for being present at a place where illegal controlled substances were being manufactured. However, Pierce was not searched at any time during the execution of the search warrant. Pierce was subsequently charged with trafficking in methamphetamine by manufacture. I.C. § 37–2732B(a)(3).

Pierce filed a motion to suppress evidence obtained during execution of the search warrant. Claiming that his initial detention was illegal, Pierce sought to suppress any testimony concerning the officer's observation of the stains on Pierce's hands and detection of an odor consistent with methamphetamine production on Pierce. After a hearing, the district court granted Pierce's motion. The district court concluded that the state had failed to establish that Pierce was an occupant of the premises, was involved in criminal activity, or was armed or dangerous. Therefore, the district court held that Pierce's initial detention while the search warrant was executed was not justified. The state appeals.

## II.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a deci-

sion on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

## ANALYSIS

■ The ruling challenged in the instant case centered on Pierce's connection to the premises to be searched pursuant to the warrant. The district court found that Pierce was standing outside, approximately fifteen to twenty feet from the home. Further, the district court found that there was no indication that Pierce was entering or exiting the premises nor was he identified as a resident. Distinguishing *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the district court held that Pierce was not an occupant of the premises searched and that *Summers* did not apply to justify Pierce's initial detention. Additionally, the district court found that there were no facts indicating that Pierce was involved in the suspected criminal activity at the premises or that he was armed or dangerous. Thus, pursuant to *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the district court held that

Pierce's mere presence on the premises subject to search, without more, did not justify his initial detention.

The state argues that the district court erroneously concluded that Pierce was not an occupant of the premises searched. The state asserts that Pierce was an occupant of the premises to be searched because of his mere presence there and, therefore, his detention was reasonable pursuant to *Summers.* In addition, the state contends that the district court erroneously applied the standard enunciated in *Ybarra* because *Ybarra* is limited to situations in which a person is *searched* merely because of his or her presence on the premises subject to search pursuant to a warrant.[1] Alternatively, the state claims that, even if Pierce's detention was unreasonable, the evidence Pierce sought to suppress was not suppressible.

■ A warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. *Summers,* 452 U.S. at 705, 101 S.Ct. at 2595, 69 L.Ed.2d at 351; *State v. Slater,* 133 Idaho 882, 889, 994 P.2d 625, 632 (Ct.App.1999). Application of this rule involves an assessment of the character of the intrusion and its justification. *Summers,* 452 U.S. at 701, 101 S.Ct. at 2593, 69 L.Ed.2d at 348.

Although the factual posture in *Summers* involved the detention of a resident of the home searched, the *Summers* opinion does not suggest that the rule cannot be applied to persons found on the premises to be searched who are not readily ascertainable as residents or occupants. The California Su-

1. In *Ybarra,* the United States Supreme Court held that although a search warrant, issued upon probable cause, gave police officers the authority to search the premises of a small public tavern and to search the bartender for narcotics, the pat-down *search* and seizure of items from a patron were not constitutionally permissible where there was no reasonable belief that the patron was involved in criminal activity or that the patron was armed or dangerous.

The *Summers* Court cautioned against the very mistake made by the district court here, stating:
The "seizure" issue in this case should not be confused with the "search" issue presented in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct.

338, 62 L.Ed.2d 238. In *Ybarra* the police executing a search warrant for a public tavern detained and searched all of the customers who happened to be present. *No question concerning the legitimacy of the detention was raised.*
.452 U.S. at 696 n. 4, 101 S.Ct. at 2590–91, n. 4, 69 L.Ed.2d at 345, n. 4 (emphasis added).
Here, only Pierce's detention was at issue and there was no evidence in the record indicating that he was searched. Therefore, *Ybarra* did not apply and the district court erred in relying on *Ybarra* to determine that Pierce's initial detention was unreasonable.

preme Court dealt with such a similar situation in *People v. Glaser,* 11 Cal.4th 354, 45 Cal.Rptr.2d 425, 902 P.2d 729 (1995). In *Glaser,* officers arrived at a home to execute a search warrant for illegal drugs or related items. They encountered Glaser just as he was about to enter a backyard gate. It was dark at the time and the weather was stormy. Glaser was ordered at gunpoint to lie face down but, due to the noise of the storm, was unable to hear what he was being ordered to do and it took him approximately two minutes to obey. Once Glaser was on the ground, he was handcuffed. The two officers who detained Glaser did not know at the time whether he was a resident of the home. Approximately two minutes after he was handcuffed, a third officer contacted Glaser and identified him as a nonresident.

On appeal, the court analyzed the case according to the framework set forth in *Summers.* First, it examined the character of the intrusion. Although Glaser was detained at gunpoint, the court noted several circumstances diminishing the intrusiveness of Glaser's initial detention. The length of the detention was brief—only two minutes. Glaser was not detained in a public place, but rather at the back gate of a private residence. Finally, the detention was incidental to the execution of the search warrant, as opposed to an independent investigatory purpose, thus reducing the likelihood that the detention would be exploited by the officers.

Second, the court examined the justifications for the detention. The court found two interrelated justifications—the officers' concern for security while executing the search warrant and their interest in determining what connection, if any, Glaser had with the premises being searched. The court noted that the threat of violence was potentially greater because of the private nature of the surroundings and the recognized propensity of persons engaged in selling narcotics to carry firearms. Additionally, the interest in determining the identity of a person entering the premises being searched was related to the officers' need for security. Further, the risk posed by residents or familiars of the household, who may be involved in criminal activities therein, was greater than that

posed by mere visitors who happen unwittingly upon the scene. The court also stated that determining the identity and connection to the premises of a person who was already present on the search site, or who entered during the search, allowed officers to ascertain whether the other interests identified in *Summers* warrant detention of the person during the search.

Finally, the court examined the nature of the specific and articulable facts which reasonably warranted Glaser's detention. The officers, who arrived after dark on a stormy night, encountered Glaser standing in an unlit spot in the driveway. None of the officers immediately recognized him. He was about to pass through a gate into the backyard of the house being searched. Glaser's apparent familiarity with the premises suggested that he was not a stranger or chance visitor but his connection with the premises was not immediately clear. In addition, when officers instructed Glaser to get down on the ground, he did not immediately obey and it took approximately two minutes before Glaser understood what he was being instructed to do.

The court rejected the state's contention that as a general rule, when police have a warrant to search a home, the mere arrival or presence of someone at the warranted premises, alone, justifies a detention for the purpose of determining the identity and connection to the searched premises. Rather, the court held that if, in the process of executing a search warrant at a private residence for illegal narcotics or related items, police officers encounter on the premises a person whose identity and connection to the premises are unknown and cannot *immediately* be determined without detaining the person, then officers may constitutionally detain him or her for the period of time required and in a manner necessary to make those determinations and to protect the safety of all present during the detention. If the person is determined to be an occupant of the home to be searched, the court held that he or she may be detained, pursuant to *Summers,* for the duration of the search. If the person is determined not to be an occupant, the court held that further detention is proper only if justified by other specific, articula-

ble facts connecting him or her to the criminal activity suspected to be occurring on the premises or establishing a danger to the officers if the person is released.

Applying the analysis used in *Summers* and *Glaser,* we first examine the character of Pierce's detention. Several factors lessen the intrusiveness of Pierce's detention. When Pierce was first encountered, he was ordered to lie on the ground by two officers at the front of a line of officers approaching the premises. An officer at the end of the line placed Pierce in handcuffs and detained him. The record does not suggest that Pierce was detained at gunpoint, which tends to reduce the intrusiveness of the detention. Pierce's initial detention was brief, lasting approximately ten minutes. Pierce was not detained in a public place but, rather, a private residence in the early morning hours. The embarrassment and stigma sometimes associated with a detention were thus reduced or eliminated. *See Summers,* 452 U.S. at 702, 101 S.Ct. at 2594, 69 L.Ed.2d at 349. Finally, Pierce's detention was incidental to the execution of a search warrant, as opposed to an independent investigatory purpose. As the Court noted in *Summers,* detentions in the course of a premises search are inherently less likely to be abused than those undertaken in order to investigate the person detained. *See id.* at 701, 101 S.Ct. at 2593, 69 L.Ed.2d at 348

Next, we examine the police justifications for Pierce's detention. In the present case, officers had specific safety concerns involving the execution of the search warrant. The lead investigating officer had previously executed a search warrant on the premises in December 1999. During that search, officers located several stolen weapons inside the home. In addition, while officers were conducting that search, a fire was started that engulfed a bedroom of the home and had to be put out by the fire department. Officers believed that a methamphetamine lab was located in the bedroom. Prior to the December incident, the same officer conducted a search on the premises in which weapons were also discovered. Due to these safety concerns, the officers had obtained a no-knock search warrant to search the premises

in the present instance. Pierce's presence on the premises in this case posed an increased risk to the officers because, if not detained, Pierce could have gone to any of the structures located on the premises that were subject to search—the home, the barn, the stable, or the vehicles—and destroyed evidence or obtained a weapon.

Related to the officers' security was their interest in determining Pierce's identity and his connection with the premises. When officers first encountered Pierce standing in the driveway, they did not know whether he was a resident or whether he was entering or exiting the premises. The risk posed by residents or familiars of the household, who may be involved in the criminal activities therein, is obviously greater than that posed by mere visitors. *Glaser,* 45 Cal.Rptr.2d 425, 902 P.2d at 736. Determining Pierce's identity and his connection to the premises allowed officers to ascertain whether other interests identified in *Summers* applied, such as prevention of flight in case incriminating evidence was found or the destruction of evidence.

Finally, we examine the nature of the specific and articulable facts reasonably warranting Pierce's detention. Officers arriving in the early morning hours to execute a no-knock search warrant encountered Pierce standing approximately fifteen to twenty feet from the home. Officers had probable cause to believe that the premises contained a methamphetamine lab. None of the officers recognized Pierce as a resident nor could they ascertain whether he was entering or exiting the premises. The scope of the search warrant was broad, authorizing officers to search the home, a nearby barn, a stable, and specific vehicles located on the premises. Pierce's presence on the premises to be searched, as well as his proximity to the home at such an early hour, suggested that he was not a stranger or unwitting visitor. Pierce's exact connection to the premises, however, was unknown. Thus, a brief detention to determine Pierce's status was justified. Given the specific and articulable facts known to the officers, coupled with the nature of Pierce's detention and its justifications, we conclude that Pierce's detention

was reasonable and that the district court erred by granting Pierce's motion to suppress based on the illegality of Pierce's detention.[2] Because of our resolution of this issue, it is unnecessary to address the state's alternative argument.

## IV.

### CONCLUSION

After examining the character of Pierce's detention and the justifications for it, together with the specific and articulable facts existing at the time officers approached Pierce in a driveway of the premises to be searched, we hold that Pierce's detention was constitutionally reasonable. Because of our resolution of this issue, it becomes unnecessary for us to address the state's alternative argument that, even if Pierce's detention was unreasonable, the evidence he sought to suppress was not suppressible. The order of the district court granting Pierce's motion to suppress is, therefore, reversed.

Judge GUTIERREZ and Judge Pro Tem WESTON, concur.

---

**2.** In addition to being detained for officer safety reasons, Pierce was detained pursuant to a general departmental policy. According to that policy, anyone present at the time a search warrant was executed on a suspected methamphetamine lab was detained during the execution of the warrant. We emphasize that our opinion is based on the specific facts of this case and should not be read to condone or authorize detention of anyone present at the time a search warrant is executed pursuant to such a policy, regardless of the circumstances.