**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41790**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Opinion No. 29** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: May 22, 2015** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **RUSSELL GLENN DAVIS,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Lynn G. Norton, District Judge.

Judgment of conviction for possession of a controlled substance with intent to deliver, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Reed P. Anderson, Deputy Appellate Public Defender, Boise, for appellant. Reed P. Anderson argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

_____

MELANSON, Chief Judge

Russell Glenn Davis appeals from his judgment of conviction for possession of a controlled substance with intent to deliver. Specifically, Davis argues that the district court erred in denying his motion to suppress. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Police officers (officers) and agents from the Air Force Office of Special Investigations (agents) were executing a search warrant on an apartment. The apartment was part of a complex consisting of a common area surrounded by four buildings. Each building contained four apartments (two on the first floor and two on the second floor) and each was only accessed via the common area. The apartment being searched was a second floor unit, and Davis was not a

1

resident. While officers were conducting the search, a resident of the apartment arrived. The resident was searched and the officers seized a cell phone. One officer noticed an incoming text message from a person identified by the phone's contacts as Russell Davis. The officer recognized the name Russell Davis because the officer had previous contact with Davis in an earlier case involving a controlled buy of marijuana.

The officer reviewed a number of text messages that had been sent and received via the phone over a two and one-half-hour period. One message sent to the phone by Davis asked if the resident still wanted "an O or anyone else . . . because im puttin [sic] in the order now?" Based upon the officer's training and experience, he recognized the term "O" as slang for an ounce of marijuana. The owner of the phone had immediately responded that he wanted "just 1," and asked to meet at a supermarket. After many messages back and forth, the phone received a message from Davis stating, "I got it, he's gone so whatcha wanna do?" The return message sent from the phone instructed Davis to "cruise to the apartment." This message was sent just before the time the phone was seized by the officer.

Officers continued to search the apartment while the agents, wearing jackets identifying each as a "Federal Agent," waited in the common area of the apartment complex. A vehicle pulled into a parking lot and the driver exited. The driver walked down a sidewalk which ran between two of the buildings to the common area. As the driver turned a corner and saw the agents, he hesitated and kept walking toward the agents. One agent introduced himself, shook the driver's hand, and asked his name. The driver identified himself as Russell Davis. The agent then asked Davis to have a seat on the curb, which Davis did. Another agent then went up to the apartment to notify the officers that a person had arrived outside. The officer who had reviewed the text messages looked out the window and saw a vehicle that he recognized as Davis's, based upon the previous contact with Davis. The officer then identified Davis as the man sitting on the curb.

That officer went down to speak with Davis and asked him where he was going. Davis said he was going to see "Mike." No resident of the apartment being searched was named Mike. The officer told Davis that he had read text messages sent from a phone and that he believed Davis had come to the apartment to sell narcotics. The officer noticed a bulge in the lower pocket of Davis's cargo shorts. He poked the bulge with the antenna of his radio and asked

2

Davis what was in his pocket. Davis did not answer. The officer told Davis to stand up for a pat-down. Davis placed his hands on his head as instructed and the officer patted down the outside of Davis's clothing. The officer and another officer both smelled raw marijuana on Davis when they stepped behind Davis to conduct the frisk. The officer later testified that he believed the large bulge in the shorts to be an ounce of marijuana and not a weapon. The officer removed a bag of marijuana from Davis's pocket. Davis was charged with possession of a controlled substance with the intent to deliver. I.C. § 37-2732(a)(1)(B).

Davis filed a motion to suppress, arguing that his initial detention and the subsequent search violated his Fourth Amendment rights. After a hearing, the district court denied the motion. Davis then entered a conditional plea of guilty, preserving the right to challenge the district court's denial of his motion to suppress. Davis appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Davis argues that the district court erred in denying his motion to suppress because he was illegally detained. He contends that he was illegally detained because he was not in the immediate vicinity of the premises being searched and there was no nexus between Davis and the activity giving rise to the search at the time of his detention.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches and seizures are presumed to be unreasonable and therefore violative of the Fourth Amendment. *See State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196,

3

198 (1995). The state may overcome this presumption by demonstrating that a warrantless search or seizure either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*

When law enforcement officers are executing a search warrant on a premises, officers are allowed to briefly detain the occupants of the premises described in the warrant. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). The authority to detain occupants arises from three important interests identified by the United States Supreme Court: (1) preventing the flight of the occupants, (2) minimizing the potential for harm to law enforcement, and (3) facilitating the completion of the search. *Id*. at 702-03. Detentions incident to the execution of a search warrant are constrained to the immediate vicinity of the premises to be searched. *Bailey v. United States*, ___ U.S. ___, ___, 133 S. Ct. 1031, 1042 (2013). In *Bailey*, the Court listed the factors to consider when delineating the immediate vicinity of a particular property: "the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id*.

The United States Supreme Court cases cited above specifically address the detention of occupants or residents of the property being searched. Idaho courts have relied on *Summers* and allowed detentions of people who are "found on the premises to be searched who are not readily ascertainable as residents or occupants." *State v. Pierce*, 137 Idaho 296, 298, 47 P.3d 1266, 1268 (Ct. App. 2002). In that case, this Court held that a defendant, who was standing in the driveway of a home when police arrived to search the premises, could be detained to determine his identity and relationship to the premises. *Id*. at 301, 137 P.3d at 1271. Similarly, this Court has held that a person who walked through the front yard of a premises being searched could be detained for the limited purpose of determining the person's identity and connection to the premises. *State v. Kester*, 137 Idaho 643, 647, 51 P.3d 457, 461 (Ct. App. 2002).

The cases upon which the district court relied differ from the instant case in one important respect--*Pierce*, *Kester*, and *Summers* all dealt with a person being seized in the immediate vicinity of private houses rather than a multi-unit, multi-building apartment complex. Davis argues that the line of cases cited above should not be extended to allow detention of individuals who arrive in the vicinity of an apartment being searched. Davis contends that interpreting the case law to include apartments would "legitimize detentions of any other

4

occupants or visitors to the entire building." Davis continues that, "taken to its logical conclusion, this rule would allow large-scale detentions of anyone who tried to walk past a 50-story apartment building in a large city while a search was occurring in one of the apartments." While it is true that extending *Summers* to apartments may permit detention of some other occupants or visitors who arrive in the immediate vicinity of the apartment being searched, we are not persuaded by Davis's argument. In context of the important interests outlined by the Supreme Court in *Summers*, officers would not be justified in detaining an individual who walks past a 50-story apartment building while a search occurs in one of the apartments because the individual usually would not be within the immediate vicinity of the premises being searched.

The primary question here is whether the same important interests outlined in *Summers* to justify the detention of persons potentially connected to a searched house also justify the detention of persons potentially connected to a searched apartment. The first important interest, preventing the flight of occupants, is equally applicable to apartments and houses. When a person arrives at his or her residence and discovers that it is being searched, the person is equally likely to flee, whether the residence is an apartment or house. The second important interest, minimizing the potential harm to law enforcement, is arguably stronger in the context of an apartment as compared to a house. In an apartment complex, there are generally more people within the vicinity of the residence being searched. Where there are more people, the *potential* risk to officers necessarily increases, justifying taking precautions to protect the officers. The third important interest, facilitating the completion of the search, is equally applicable to apartments and houses. Whether a residence is a house or apartment, does not affect whether detention will facilitate the completion of the search. Weighing the three factors together, the important interests delineated in *Summers* weigh at least as heavily in favor of permitting brief detentions pursuant to the search of an apartment as they do pursuant to the search of a house. Thus, a person may be detained in the immediate vicinity of an apartment being searched just as that person may be detained in the immediate vicinity of a house being searched.

When determining whether a person is in the immediate vicinity of a searched premises, the trial court should consider the layout of the property--including the location of entrances to the searched unit--and the detained individual's proximity to the apartment's entrance. Here,

5

Davis arrived at a small apartment complex, walked down the sidewalk, and turned toward the common entrance shared by four apartments. Davis argues that officers were not permitted to detain him because he was not within the immediate vicinity of the apartment being searched. Davis also argues that none of the agents who detained Davis in the common area of the complex had any reason to believe Davis was an occupant of, or even a visitor to, the apartment being searched. In addition, an agent admitted that he did not know if Davis was going to the apartment. Therefore, according to Davis, the agent did not have an articulable basis for suspecting any criminal activity at the moment he detained Davis.

We agree that the agent, who did not know about the text messages from Davis, did not have reasonable, articulable suspicion to suspect Davis was involved in criminal activity. The general rule is that an investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Sheldon*, 139 Idaho at 983, 88 P.3d at 1223. However, this general rule does not set the standard for a detention when a person arrives at a premises being searched pursuant to a search warrant. When a person arrives at a premises while a search warrant is being executed, officers are allowed to detain the person for the limited purpose of determining the person's identity and connection to the premises being searched. *See Kester*, 137 Idaho at 647, 51 P.3d at 461.

Davis was detained on a communal sidewalk that led to the common entry area of only four apartments. While Davis was not inside the apartment or immediately outside the door to the apartment, he was walking toward the stairs--the only entrance to the second-floor apartment. As found by the district court, when Davis was stopped, he was very close to the stairs leading to the apartment being searched. It appears from the record that Davis was perhaps 8 to 10 feet, at the most, from the bottom of the stairs. Accordingly, we hold that Davis was in the immediate vicinity of the apartment being searched and that the agent was justified in stopping Davis for the limited purpose of ascertaining his identity and relationship to the apartment. Further, the five minutes that Davis was detained was not unreasonable given the circumstances. It took several minutes for the agents to ascertain Davis's identity, go up the stairs to where the officers were conducting the search, and communicate that a person named Russell Davis had arrived in order

6

to determine whether he had a relationship to the premises. Thus, Davis's detention was reasonable under the circumstances.

## IV.

## CONCLUSION

Davis's brief detention was proper under the specific circumstances of this case because he was in the immediate vicinity of the premises being searched. Therefore, the district court did not err in denying Davis's motion to suppress. Accordingly, Davis's judgment of conviction for possession of a controlled substance with intent to deliver is affirmed.

Judge LANSING and Judge GUTIERREZ, **CONCUR**.