**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48650**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: September 13, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| NEVA KENNIE GONZALEZ, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge.

Judgment of conviction for two counts of possession of a controlled substance, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Neva Kennie Gonzalez appeals from her judgment of conviction for two counts of felony possession of a controlled substance (heroin and methamphetamine), Idaho Code § 37-2732(c)(1). Gonzalez challenges the district court's denial of her motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In July 2019,[1] law enforcement officers executed a search warrant on two properties identified in the warrant as: (1) a single-family residence on North Elton Lane, which included a

---

[1] The district court's order denying Gonzalez's suppression motion mistakenly states the search warrant was executed in July 2020 instead of July 2019.

1

two-story, detached garage with living quarters on the second floor (main residence); and (2) a shop identified by a parcel number located behind the main residence. According to the district court's factual findings, these two properties were not "directly connected" but rather were "separated by a third property," which was not listed in the warrant.

Officers from the Kootenai County Sheriff's Office executed the search warrant, including Sergeant Ellis who directed the operation. During the search of the living quarters above the detached garage, officers discovered controlled substances. In the same room, officers also discovered Gonzalez's identification and communicated this information to Sergeant Ellis. Before the search warrant's execution, Sergeant Ellis was aware of information indicating Gonzalez had been part of a controlled purchase that gave rise to the warrant.

FBI Special Agent Schoffstall assisted in executing the warrant. Among other things, he patrolled on foot a dirt road on the third property between the main residence and the shop to maintain a law enforcement perimeter. At some point during the warrant's execution, Gonzalez arrived on the dirt road, which Special Agent Schoffstall was patrolling. To reach this dirt road, Gonzalez drove north on North Elton Lane and past an east-west road leading to the front of the main residence, through a metal gate to the third property, and turned left onto the dirt road. According to Special Agent Schoffstall's testimony, the dirt road goes behind three residences and stops at a small garden. The district court found that "the main residence's backyard could be reached from the dirt road by a gate in the fence surrounding the property" and that the dirt road, "while not within the lawful limits of the premises [to be searched], was a direct path to a gate in the fence and into the backyard of the main residence."

After Gonzalez turned onto the dirt road, Special Agent Schoffstall stopped Gonzalez. Gonzalez testified at the suppression hearing that she identified herself and told Special Agent Schoffstall the property was her mother's; Special Agent Schoffstall told Gonzalez to leave; she left; and after she traveled past the main residence, Sergeant Ellis stopped Gonzalez and instructed her to return to the front of the main residence. In contrast, Special Agent Schoffstall testified that, after he identified Gonzalez on the dirt road, he informed Sergeant Ellis that Gonzalez was on the scene; Sergeant Ellis instructed Special Agent Schoffstall to direct Gonzalez to the front of the main residence; and Special Agent Schoffstall told Gonzalez to drive to the front of the main

residence. Sergeant Ellis also testified that he directed Special Agent Schoffstall to have Gonzalez drive to the front of the main residence where Sergeant Ellis was located and that he recalled seeing Gonzalez drive towards his location.

When Gonzalez arrived at the front of the main residence, Sergeant Ellis made contact with Gonzalez and asked her to exit the vehicle. In response, Gonzalez began "digging around inside her vehicle" for her shoes. At that point, Sergeant Ellis inquired whether Gonzalez had any weapons in the vehicle, and when she responded she had a gun, Sergeant Ellis ordered Gonzalez out of her vehicle. Another officer, who was already on the scene assisting with the warrant's execution, used a drug dog to conduct a dog sniff around Gonzalez's vehicle, and the dog alerted. Thereafter, Sergeant Ellis advised Gonzalez of her *Miranda*[2] rights and asked her about what was in her vehicle. Gonzalez admitted to having a gun, heroin, methamphetamine, and syringes in the vehicle. These items were located during a subsequent search of the vehicle.

As a result of this encounter, the State charged Gonzalez with two counts of felony possession of a controlled substance. Gonzalez filed a suppression motion. As it relates to this appeal, Gonzalez argued the search violated her Fourth Amendment rights because Special Agent Schoffstall detained her outside the search warrant's immediate vicinity. The district court rejected this argument, ruling that the "officers detained [Gonzalez] within the immediate vicinity of the search warrant premises." In denying Gonzalez's suppression motion, the court reasoned:

> Given the circumstances, it was objectively reasonable for the officers to consider someone who was entering a private dirt road located directly between the two search warrant locations to be within the immediate vicinity, particularly since [Gonzalez] was intending to enter one of the search warrant properties from the dirt road. The road, while not within the lawful limits of the premises, was a direct path to a gate in the fence and into the backyard of the main residence.

Gonzalez entered a conditional guilty plea to two counts of felony possession of a controlled substance, while reserving her right to appeal the denial of her suppression motion. Gonzalez timely appeals.

---

2       *See Miranda v. Arizona*, 384 U.S. 436 (1966).

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Gonzalez asserts the district court erred when it denied her suppression motion. Specifically, she argues the State failed to establish "she was within the immediate vicinity of the premises to be searched when Special Agent Schoffstall stopped her." The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*

The United States Supreme Court established one such exception in *Michigan v. Summers*, 452 U.S. 692 (1981). In that case, the Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705 (footnote omitted). In reaching this holding, the Court reasoned that legitimate law enforcement interests justified this rule, including preventing flight, minimizing the risk of harm to officers, and facilitating the search warrant's orderly completion. *Id.* at 702-03.

Subsequently, in *Bailey v. United States*, 568 U.S. 186 (2013), the Court limited its holding in *Summers*, ruling that "the categorical authority to detain incident to the execution of a search

4

warrant must be limited to the immediate vicinity of the premises to be searched." *Bailey*, 568 U.S. at 199. Although the Court did not define the meaning of "immediate vicinity," it identified a nonexclusive list of factors to consider in determining what constitutes the immediate vicinity:

> [C]ourts can consider a number of factors to determine whether an occupant was detained within the immediate vicinity of the premises to be searched, including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors.

*Id.* at 201.

This Court has previously addressed whether a defendant was within the immediate vicinity of the subject premises during the execution of a search warrant in *State v. Davis*, 158 Idaho 857, 353 P.3d 1091 (Ct. App. 2015). In that case, officers were executing a warrant on an apartment in a complex of four buildings. *Id.* at 859, 353 P.3d at 1093. The surrounding common area provided the only access to the apartments. *Id.* While conducting the search, an officer seized the resident's cell phone; saw an incoming text message from Davis, whom the officer recognized from a prior contact involving a controlled buy of marijuana; and saw a return message sent just before the officer seized the cellphone instructing Davis to "cruise to the apartment." *Id.* While the officers continued searching the apartment, Davis arrived at the apartment complex, and an officer detained him on a communal sidewalk leading to the apartment's entry. *Id.* at 862, 353 P.3d at 1096. Subsequently during a search of Davis, officers discovered marijuana. *Id.* at 859-60, 353 P.3d at 1093-94.

On appeal from the denial of Davis's suppression motion, this Court addressed whether "the same important interests outlined in *Summers* [that] justify the detention of persons potentially connected to a searched house also justify the detention of persons potentially connected to a searched apartment." *Davis*, 158 Idaho at 861, 353 P.3d at 1095. The Court ruled that when determining whether an individual is in the "immediate vicinity" of a searched premises, the trial court should consider "the layout of the property," "the location of entrances," and the detained individual's proximity to the entrance. *Id.* at 862, 353 P.3d 1096. Regarding whether Davis was in the immediate vicinity when detained, this Court held that "Davis was in the immediate vicinity of the apartment being searched and that the agent was justified in stopping Davis for the limited

purpose of ascertaining his identity and relationship to the apartment." *Id.* In support, the Court noted that "when Davis was stopped, he was very close to the stairs leading to the apartment being searched," "perhaps 8 to 10 feet, at most, from the bottom of the stairs." *Id.*

On appeal in this case, Gonzalez attempts to distinguish *Davis* on the basis that "Gonzalez was likely not a mere 8 to 10 feet from the main residence property when Special Agent Schoffstall stopped her." Further, Gonzalez asserts several arguments challenging the district court's finding that she was within the immediate vicinity of the properties subject to the search warrant. These arguments include that the State only showed the "general area" where Special Agent Schoffstall stopped Gonzalez and failed to show she was within "an area where she might 'pose a real threat to the safe and efficient execution of a search warrant.'" "[T]he rural setting did not expand the area where [Gonzalez] would pose a real threat to the execution of the search warrant." Special Agent Schoffstall only testified he was "generally within eyesight" of the main residence, and no evidence shows he "knew [Gonzalez] intended to enter the main residence" when he stopped her.

We conclude substantial evidence supports the district court's finding that Gonzalez was in the "immediate vicinity" of the main residence identified in the search warrant.[3] As the court found, the dirt road on which Special Agent Schoffstall encountered Gonzalez is "a direct path to a gate in the fence and into the backyard of the main residence." Regarding this area, Special Agent Schoffstall testified that the dirt road "goes behind three residences and stops approximately where they had a small garden" behind the main residence. Gonzalez's testimony establishes she had reached this area when she encountered Special Agent Schoffstall. Gonzalez testified that, "I

---

[3] During the suppression hearing, the district court admitted into evidence four aerial photographs showing the properties subject to the search warrant and the surrounding area. Witness testimony indicates that these photographs were presented in color at the suppression hearing. For example, various witnesses testified about blue and green "boundary lines" and "highlight[ing]" on the photographs and identified certain properties in the photographs either by brown or green roofs. The exhibits in the appellate record, however, are black and white. The absence of colored exhibits in the record renders some of the testimony ambiguous. To the extent that testimony is ambiguous because the colored exhibits are not in the record, we presume it supports the court's findings and conclusions. *See State v. Repici*, 122 Idaho 538, 541, 835 P.2d 1349, 1352 (Ct. App. 1992) (ruling missing record on appeal presumed to support trial court's actions).

was pulling up to what they said is the garden area [and] I saw [Special Agent] Schoffstall coming down out of the house, down the plank way and up through the gate." Further, Gonzalez testified that, "I actually saw [Special] Agent Schoffstall coming down out of the back of the apartment and that's where he told me that there's no access to the property."[4] Similarly, Sergeant Ellis also testified that, "It was reported [Gonzalez] had pulled up to the rear of the residence via the road" and that her truck "pulled into the back of the property."

Moreover, the evidence shows this area near the garden and by the back gate to the main residence's backyard was within the area of the suspected criminal activity that gave rise to the warrant. For example, Special Agent Schoffstall testified that, "the information that I had [was that] narcotics trafficking had taken place behind those residences." Further, he testified that, "when I made contact [with Gonzalez], I considered her within my perimeter and I was not going to allow her to continue on deeper into what I considered our law enforcement security bubble."

According to Special Agent Schoffstall, Gonzalez's presence in this area posed a risk of harm to law enforcement. Specifically, he testified that, "I knew [Gonzalez] was within our sphere of influence and that her mere presence could pose a risk to me or to other officers." This testimony refutes Gonzalez's assertion that the State failed to show Gonzalez was within "an area where she might 'pose a real threat to the safe and efficient execution of a search warrant.'" Further, Gonzalez's own testimony refutes her argument that she was only "generally within eyesight" of the property subject to the search warrant. As noted above, she testified that she "actually saw [Special] Agent Schoffstall coming down out of the back of the apartment." This testimony indicates Gonzalez was within direct eyesight of the property. That Special Agent Schoffstall may not have been aware of Gonzalez's intent to enter the property does not refute the fact that she was in the immediate vicinity of the premises to be searched.

---

[4] Although the district court found Gonzalez's testimony was not credible, that finding related to the contradiction between her testimony and that of Special Agent Schoffstall and Sergeant Ellis about whether Special Agent Schoffstall detained Gonzalez on the dirt road or instead Sergeant Ellis detained Gonzalez after she drove past the main residence, as she testified. The court did not make any factual findings otherwise about Gonzalez's testimony not being credible.

Additionally, the fact that Gonzalez may have been more than "a mere 8 to 10 feet from the main residence property when Special Agent Schoffstall stopped her" is of no consequence. We do not interpret *Davis* as establishing a bright-line rule for purposes of determining the immediate vicinity within which officers have authority to detain individuals during a search warrant's execution. Determining the immediate vicinity of a rural property, such as the properties at issue in this case, will necessarily involve different facts than determining the immediate vicinity of an apartment complex as in *Davis*--including, for example, that the detained individual may be in a vehicle and in a wooded area as in this case. The district court properly considered the layout of the properties, including the dirt road's direct path to the main residence's backyard, to find Gonzalez was in the immediate vicinity when Special Agent Schoffstall encountered Gonzalez and instructed her to go to the front of the main residence

## IV.

## CONCLUSION

Substantial evidence supports the district court's finding that Gonzalez was in the immediate vicinity of the main residence subject to the search warrant. Accordingly, Special Agent Schoffstall had authority to detain Gonzalez incident to the warrant's execution. We affirm the court's order denying Gonzalez's suppression motion and affirm the judgment of conviction.

Judge GRATTON and Judge HUSKEY **CONCUR**.