51 P.3d 457

**STATE of Idaho, Plaintiff–Appellant,**

v.

**John KESTER, Defendant–Respondent.**

No. 27145.

Court of Appeals of Idaho.

June 20, 2002.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

Wiebe & Fouser, Canyon County Public Defenders; Onadayo O. Onanubosi, Deputy Public Defender, Caldwell, for appellant. Onadayo Ó. Onanubosi argued.

JUDD, Judge Pro Tem.

John Kester was charged with possession of a controlled substance, methamphetamine, with intent to deliver, I.C. § 37–2732(a)(1)(A), possession of marijuana, I.C. § 37–2732(c)(3), and possession of drug paraphernalia, I.C. 37–2734A. Subsequently Kester filed a motion to suppress evidence, which

the district court granted. The state appeals from the district court's memorandum decision and order granting Kester's motion to suppress. We reverse.

## I.

### FACTS AND PROCEDURE

On April 26, 2000, at approximately 11:00 p.m., police officers executed a "no-knock" search warrant at the home of Mark Lee, looking for weapons and narcotics. Because the police had information that the residents of the home were armed and dangerous and that people coming to the house might have weapons with them, a SWAT team was deployed to protect the searching officers. While the search was in progress, a white Ford Tempo drove up to a nearby corner. Kester exited the vehicle and started to approach the residence. When Kester reached the yard and had walked a short distance towards Lee's house, he observed the police officers, made eye contact with SWAT team member Corporal Montoya, then turned around and started walking back toward his vehicle. Montoya approached Kester, and asked "who he was and what he was doing there." Kester provided the officer with identification and indicated he was there "to see Mark Lee about an engine." Montoya then conducted a pat down of Kester and felt a long skinny object that he believed to be a pipe for smoking narcotics in Kester's right front pants pocket.[1] Montoya asked Kester what the object was and Kester confirmed that it was a pipe. Montoya seized the pipe from Kester's pocket and continued the frisk.

Montoya then asked Kester if "there [was] anything else I needed to know about." Kester replied that he had some powder in his fanny pack. Montoya searched the pack and found approximately twenty-six grams of methamphetamine and a small amount of marijuana. Montoya arrested Kester, and the state subsequently charged Kester with felony possession of methamphetamine with the intent to deliver, misdemeanor possession of marijuana, and possession of drug paraphernalia. Kester moved to suppress the

physical evidence, stating that Montoya violated his Fourth Amendment rights by illegally searching him. The district court agreed, granting Kester's motion to suppress. The state timely appealed.

## II.

### STANDARD OF REVIEW

The standard of review on a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the trial court is vested with the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

### THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE

On appeal, the state does not contest the trial court's findings of fact. Our review of the record convinces us that the trial court's findings of fact are supported by substantial evidence. We turn, therefore, to the issues of whether Montoya was constitutionally justified in (1) stopping and detaining Kester and (2) frisking Kester.

A warrantless search is presumptively unreasonable under the Fourth Amendment unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *State v. Ferreira,* 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999).

---

1. The validity of the continued investigation, seizure of contraband and arrest of Kester following the identification of the pipe during the frisk are not issues raised in this appeal.

■ In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court established a stop-and-frisk exception to the warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct.App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct.App.1999).

## A. The Stop and Detention

■ In the execution of a search warrant for drugs or contraband at a residence, police have the constitutional right to detain, during the duration of the search, those individuals who are occupants of the residence. *Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340, 351 (1981). Similarly, individuals found on the premises at the inception of the search whose identity and connection to the premises are unknown may be detained for the time necessary to determine those facts and to protect the safety of those present during the detention. *People v. Glaser*, 11 Cal.4th 354, 45 Cal. Rptr.2d 425, 902 P.2d 729, 734 (1995). Both *Summers* and *Glaser* recognize that the articulable and individualized suspicion to support the detention is found in the issuance of a search warrant by a judicial officer based upon probable cause. *Summers*, 452 U.S. at 703–04, 101 S.Ct. at 2594–95, 69 L.Ed.2d at 350; *Glaser*, 45 Cal.Rptr.2d 425, 902 P.2d at 740.

In the instant case, Corporal Montoya approached Kester in order to determine his relationship to the house being searched and asked him to identify himself and state his reason for coming to the house. This was the kind of stop and detention to determine an individual's relationship to the place being searched that is sanctioned by *Summers* and *Glaser*.[2] Kester's approach toward the house while it was being searched was a neutral circumstance in itself and gave rise to no suspicion. However, given the late hour of the search and the concerns for officer safety, following the rationales in *Summers*

and *Glaser*, the police were justified in stopping Kester long enough to determine his identity and his connection to the premises. Accordingly, we hold that the initial detention of Kester was justified.

## B. The Frisk

■ Next we review whether the frisk of Kester was justified. Reasonable grounds to justify a lawful investigatory stop do not automatically justify a frisk. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officers on the scene and the inferences of risk of danger reasonably drawn from the totality of those necessary circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. *See also State v. Muir*, 116 Idaho 565, 567–68, 777 P.2d 1238, 1240–41 (Ct.App.1989).

Kester argues that the circumstances in the instant case are similar to those in *State v. Zapp*, 108 Idaho 723, 701 P.2d 671 (Ct. App.1985). In *Zapp*, after the defendant entered a house where officers were present, the officers asked to search the paper sack he was carrying. Zapp's handing over the paper sack to the officers was non-consensual. This court held that the search exceeded the permissible scope of the *Terry* detention and was in violation of Zapp's Fourth Amendment rights. Once Zapp provided proper identification, the police had no basis to either arrest Zapp or conduct a search of the paper sack, because nothing had occurred to give rise to an exception to the warrant requirement. The search of Zapp was not undertaken as a "frisk" for officer

**2.** During oral argument on appeal, Kester's appellate counsel acknowledged the lawfulness of the initial stop and detention.

safety. *Zapp*, 108 Idaho at 727, 701 P.2d at 675. Similarly, Kester argues that once he identified himself and provided a reasonable explanation for his coming to the Lee home, Montoya had no justification to proceed with a frisk. The district court agreed, concluding:

> Montoya has not been able to articulate specific facts that would justify the frisk of Kester. The fact that Kester was coming to the residence where a search warrant had been executed does not create a belief that there was concern for officer safety. The fact that the occupant was apparently dealing guns for drugs does not mean that every visitor to the premises is likely armed and dangerous. The fact that violence may have occurred at the residence sometime in the past by persons other than Kester does not properly lead to a conclusion that Kester is dangerous or that the officer's safety is in jeopardy.

We disagree. The test from *Terry* does not require that an officer be absolutely certain or even have probable cause to believe that an individual is armed; rather "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

We conclude that the specific and articulable facts known to Montoya at the time he decided to frisk Kester were sufficient to lead a reasonably prudent person to believe that Kester posed a potential threat to the officers searching the house. The encounter took place late at night, at approximately 11:00 p.m., which made Kester's explanation that he was there to see Lee "about an engine" questionable. Montoya could observe that Kester was wearing a "fanny pack," which could conceal a weapon. Montoya knew that the search warrant had been authorized as a no-knock search in order to "guarantee officer safety" and that the Canyon County SWAT team was present to secure the premises during the search. Montoya knew that the warrant application alleged that the resident, Mark Lee, was trading drugs in exchange for weapons, that Lee had threatened to kill an informant by holding a gun to his head, and that officers were searching for firearms. Given the time of day, the fanny pack, the assertion that some individuals coming to the house were bringing weapons to trade for drugs and the specific, reasonable inferences that Montoya drew from the facts known to him, we conclude that he was warranted in his belief that Kester may have posed a threat to the safety of the officers. Therefore, Montoya was justified in conducting a frisk of Kester.

## IV.

## CONCLUSION

Accordingly, we hold that it was proper for Montoya to detain Kester to determine his identity and relationship to the house being searched and to frisk Kester for weapons. We reverse the district court's order suppressing the physical evidence and remand for proceedings consistent with this opinion.

Judge LANSING and Judge GUTIERREZ concur.