155 P.3d 712

STATE of Idaho, Plaintiff–Respondent,

v.

Jeremy Dean REYNOLDS, Defendant–Appellant.

No. 32374.

Court of Appeals of Idaho.

March 7, 2007.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant. Diane M. Walker argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

PERRY, Chief Judge.

Jeremy Dean Reynolds appeals from his judgment of conviction for possession of cocaine. Reynolds specifically challenges the district court's order denying his motion to suppress evidence. Because we conclude that Reynolds's motion to suppress should have been granted, we vacate Reynolds's judgment of conviction.

## I.

### FACTS AND PROCEDURE

The following facts were revealed through testimony and were set forth by the district court in its findings in denying Reynolds's motion to suppress. At 11:45 p.m. on April 7, 2004, probation officers and a police officer conducted a search of a business owned by a probationer because they suspected drug activity at the business. Reynolds's residence

was located in a separate building to the west of the probationer's business, and an alley ran behind these buildings. Behind his residence on the same side of the alley was a separate shop building also owned by Reynolds. Reynolds's shop was 15 feet from the probationer's business and separated by a graveled open area (the "15–foot open area").

According to the police officer's testimony, the building housing the probationer's business had a back door that opened into the 15–foot open area. The officer testified that he went to the rear of the probationer's business to monitor anybody coming or going from the back door during the search. As the officer walked down the alley toward the rear of the probationer's business, he observed Reynolds walking through the 15–foot open area. The officer testified that Reynolds was initially 4 feet from the back door of the building housing the probationer's business. However, the officer testified that he did not know the location of the property line in relation to Reynolds's position in the 15–foot open area. The officer recognized Reynolds from prior police work and ordered Reynolds to stop. Reynolds looked back at the officer but proceeded on his way and entered his shop without stopping. The officer did not pursue Reynolds into his shop.

Minutes later, Reynolds emerged from his shop. The officer immediately ordered Reynolds to put his hands on a vehicle parked in the 15–foot open area and conducted a pat-down search of Reynolds. The officer saw a glass pipe sticking out of the back pocket of Reynolds's pants and seized the pipe, which allegedly contained methamphetamine residue. The officer then handcuffed Reynolds and placed him in a patrol vehicle. The officer testified that Reynolds consented to a search of his shop after the probation search was complete. The officer found drug paraphernalia as well as substances that later tested positive as hashish, cocaine, and marijuana.

Reynolds was charged with three counts of possession of a controlled substance, I.C. § 37–2732(c), one count for the methamphetamine in the pipe and one count each for the cocaine and marijuana found in the shop. Reynolds filed a motion to suppress the pipe and the drugs found in his shop as the fruits of an unconstitutional detention and frisk. The district court denied Reynolds's motion to suppress. Reynolds filed a motion to reconsider, challenging the police officer's testimony at the suppression hearing. Reynolds then withdrew the motion to reconsider and pled guilty to possession of cocaine. The state dismissed the remaining two counts. Reynolds appeals, challenging the district court's denial of his motion to suppress.

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

### A. Factual Dispute

Reynolds initially argues that there was no back door on the building housing the probationer's business or any other way of exiting the building from the rear. The police officer testified repeatedly that the probationer's business did have a back door that opened into the 15–foot open area. The district court relied on this testimony in its oral finding at the hearing on the motion to suppress that Reynolds was initially 4 feet from the back door of the probationer's business. Subsequent to the order denying the motion to suppress, Reynolds submitted evidence with a motion to reconsider that indicates there was no back door or any other way of exiting the rear of the probationer's business. However, Reynolds withdrew his motion to reconsider at a status conference where he pled guilty. Because Reynolds was reserv-

ing the right to appeal the motion to suppress, the district court apparently clarified its finding of fact regarding the back door. The district court stated that the officer had not lied about there being a back door because the officer never testified there was a back door. In so doing, the district court implied that there was no back door. We need not decide whether the district court's comments at the status conference constituted an amended finding of fact that there was not a back door, or whether such an amended finding would have been supported by the evidence, because the existence of a back door is not dispositive in our analysis of the motion to suppress.

## B. Fourth Amendment

Reynolds argues that the district court erred in denying his motion to suppress because the officer conducted an unlawful stop and an unlawful frisk. The pipe and the drugs found in his shop, Reynolds argues, should therefore be suppressed as fruits of the unconstitutional stop and frisk. Although Reynolds contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Reynolds's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct.App. 1999).

### 1. The stop

■■■ A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999). In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct.App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct.App.1999). The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705.

The state concedes that the officer did not have reasonable suspicion that Reynolds was involved in criminal activity at the time of the stop, but argues that the officer was entitled to conduct an investigatory stop to secure the premises of the probation search. Reynolds correctly argues that Idaho appellate courts have not recognized an exception to the warrant requirement for an investigatory detention of a person on the premises of a probation search without independent reasonable suspicion that the person is involved in criminal activity.

■■ This Court has recognized that police are entitled to detain certain individuals in the execution of a search warrant, even without independent reasonable suspicion that those individuals are involved in criminal activity. *See State v. Kester*, 137 Idaho 643, 51 P.3d 457 (Ct.App.2002); *State v. Pierce*, 137 Idaho 296, 47 P.3d 1266 (Ct.App.2002). In the execution of a search warrant for drugs or contraband at a residence, it is lawful for police to detain, during the duration of the search, those individuals who are occupants of the residence. *Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340, 351 (1981); *Kester*, 137 Idaho at 646, 51 P.3d at 460. Similarly, individuals found on the premises at the inception of the search and whose identity and connection to the premises are unknown may be detained for the time necessary to determine those facts and to protect the safety of those present during the detention. *Kester*, 137 Idaho at 646, 51 P.3d at 460; *Pierce*, 137 Idaho at 300, 47 P.3d at 1270. In *Pierce*, the defendant was standing in the driveway, his identity and connection to the premises were un-

known. The scope of the search warrant was broad, authorizing officers to search not only the home, but also a nearby barn, a stable, and certain vehicles. In *Kester*, the defendant entered the yard and was approaching the home while the search was in progress. In both *Pierce* and *Kester*, the police had information linking weapons to the searched premises.

■ When police detain individuals in the execution of a search warrant, the articulable and individualized suspicion to support the detention is found in the issuance of a search warrant by a judicial officer based upon probable cause. *Kester*, 137 Idaho at 646, 51 P.3d at 460. In *Summers*, the Court noted that the fact the police had a warrant to search the home of the detained individual in that case did not preclude the possibility that comparable police conduct may be justified by exigent circumstances in the absence of a warrant. *Summers*, 452 U.S. at 702 n. 17, 101 S.Ct. at 2594 n. 17, 69 L.Ed.2d at 350 n. 17. However, we also note that in *Summers* the defendant was departing the home, walking down the front steps and, therefore, directly connected to the premises to be searched.

The state relies on a California appellate decision that extended the reasoning of *Summers* to hold that an officer acted reasonably in detaining individuals leaving the premises of a residence subject to a warrantless probation search. *See People v. Matelski*, 82 Cal.App.4th 837, 98 Cal.Rptr.2d 543 (2000). The search was prompted by the fact that the probationer had failed a drug test. As the officers arrived at the probationer's home, they saw the defendants walking out the front door. The officers detained the defendants and ordered them to return inside the home. The *Matelski* court balanced the extent of the intrusion against the government interests justifying it to evaluate the constitutionality of the detention. *Id.*, 98 Cal.Rptr.2d at 551. The court reasoned that the extent of the intrusion was minimal because it was only fifteen minutes long and occurred at a residence in a remote area out of the public view. The government's interests were in protecting officer safety and determining the defendants' connection to the

probationer. The officer testified that one defendant was considerably larger than the officer and was upset at being detained. The officer did not know whether the defendants were armed, and the court noted that persons using or dealing in drugs are frequently armed. Additionally, the officers had an interest in identifying the defendants because the probationer was prohibited by his terms of probation from consorting with convicted felons. The court concluded that the detention was reasonable because the governmental interests in enforcing a valid term of probation outweighed the brief and minimally intrusive detention of the defendants for the purpose of learning their identity. *Id.*, 98 Cal.Rptr.2d at 552–53.

The situation that existed when Reynolds was detained in the present case is clearly distinguishable from *Matelski*. The district court found that Reynolds was in the 15–foot open area, 4 feet from the building housing the probationer's business, when the officer first observed him. Even if we assume there was a back door on the building housing the probationer's business, the district court found that the officer did not observe Reynolds leaving the building. The testimony and the district court's findings of fact do not specify who owned the 15–foot open area in which the officer first observed Reynolds or where the property line divided the area. However, the officer's testimony indicates that the officer knew Reynolds owned the residence and shop next door to the probationer's business. It is therefore clear that the officer knew Reynolds was on or very near his own property when the officer initially observed him and ordered him to stop. At oral argument, the state conceded that the officer had no justification to stop Reynolds when he initially ordered Reynolds to stop. Reynolds therefore exercised his right to ignore the officer and walk away.

■ Reynolds was not detained until minutes later when he emerged from a building on his own property—his shop. The officer testified that the detention occurred immediately after Reynolds emerged from his shop before Reynolds could move in any direction. Reynolds was therefore clearly on his own property when the officer detained him. In

contrast, the detained individuals in *Matelski* were observed walking out the front door of the probationer's residence and were, therefore, obviously on the property subject to the search. The record does not establish any nexus between Reynolds and the criminal activity giving rise to the probation search at the time that the officer stopped him. Even if the officers had been conducting a search pursuant to a warrant instead of a probation search, this Court's holding in *Kester* and *Pierce* only authorized the detention of individuals found *on the premises being searched* when their identity and connection to the premises are unknown. *See Kester*, 137 Idaho at 646, 51 P.3d at 460; *Pierce*, 137 Idaho at 300, 47 P.3d at 1270. When an individual is found on the premises being searched pursuant to a valid warrant, there is a nexus between the individual and the criminal activity giving rise to the search that justifies a brief investigative detention if the individual's identity and connection to the premises are unknown.

The state argues that the officer acted reasonably because he suspected Reynolds was a threat to himself and the probation officers. In support of this argument, the state relies on testimony from the officer regarding Reynolds's prior drug use and his possible involvement in a violent crime, but does not argue that Reynolds threatened the officer in any way on the night in question. This argument ignores the fact that there was no nexus between Reynolds and the criminal activity giving rise to the probation search when he was stopped. Police officers are not entitled to detain the neighbor of a site subject to a lawful search while that neighbor is on his or her own property simply because the officer recognizes the neighbor as a person who has been involved in crime in the past. Such generalized knowledge of Reynolds's past would not provide the officer with the reasonable and particularized suspicion necessary to lawfully stop Reynolds on the night in question while Reynolds was on his own property.

We therefore need not decide whether the police can constitutionally detain individuals found *on the premises* of a lawful probation search. We hold that, even if this Court were to extend the holdings in *Summers*, *Kester*, and *Pierce* to permit officers to detain individuals on the premises of probation searches, the facts available to the officer in this case would still not justify Reynolds's detention. Additionally, the officer did not have facts supporting a reasonable suspicion that Reynolds was involved in criminal activity independent from suspected drug activity giving rise to the probation search. The stop was unconstitutional because it did not fall within *any* well-delineated exception to the warrant requirement.

### 2. Fruit of the poisonous tree

 If evidence is not seized pursuant to a recognized exception to the warrant requirement, the evidence discovered as a result of the warrantless search must be excluded as the fruit of the poisonous tree. *State v. Van Dorne*, 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct.App.2004). Consent to search does not expunge the taint of unlawful police activity where the events are irrevocably intertwined. *State v. Kerley*, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct.App.2000). If this Court determines that the consent to search was derived by exploitation of the unlawful police conduct, the consent will not purge, from the discovered evidence, the taint of the unlawful police conduct. *Id.*, 134 Idaho at 874–75, 11 P.3d at 493–94.

Here, the methamphetamine pipe was seized from Reynolds's back pocket during, and as a result of, the unlawful stop and should have been suppressed. The officer testified that Reynolds consented to the search of his shop which uncovered the cocaine and marijuana after Reynolds was placed in the patrol vehicle. The cocaine and marijuana should have been suppressed because the consent flowed directly from the unlawful stop and detention. The district court therefore erred in denying Reynolds's motion to suppress the evidence.

### III.

### CONCLUSION

We need not resolve the factual dispute over whether the building housing the probationer's business had a back door because the

existence of a back door is not dispositive in our analysis of the motion to suppress. The officer's stop of Reynolds was unreasonable because, even if we were to hold the police are entitled to detain individuals on the premises of a lawful probation search, Reynolds was not on the premises subject to the probation search at the time he was stopped. All of the evidence seized was the fruit of the unreasonable stop. Therefore, the district court erred in denying Reynolds's motion to suppress. Accordingly, we vacate Reynolds's judgment of conviction for possession of cocaine.

Judge LANSING and Judge GUTIERREZ, concur.