**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43129**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Opinion No. 40S |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 26, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| CHAD LEE WILLIAMS, | ) | SUBSTITUTE OPINION |
| | ) | THE COURT'S PRIOR OPINION |
| Defendant-Appellant. | ) | DATED JUNE 16, 2016, IS HEREBY |
| | ) | WITHDRAWN |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, Interim State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Chad Lee Williams appeals from his judgment of conviction, asserting the district court erred in denying his motion to suppress. For the reasons set forth below, we affirm the district court's holding that Williams' initial detention was constitutionally permissible because either his detention was a *de minimis* intrusion that was outweighed by significant law enforcement interests when executing the arrest warrant for a third party or the officers had a reasonable suspicion Williams was harboring a felon. We also affirm the district court's holding that the initial detention was not unreasonably prolonged and there was probable cause to arrest Williams for frequenting a place where controlled substances are known to be located.

**I.**

**FACTS AND PROCEDURE**

Boise City Police officers began surveillance on an apartment where they believed the subject of an arrest warrant resided. Officers positioned themselves at the front of the apartment

1

and one officer positioned himself at the back. After conducting surveillance for thirty minutes, the officers watched one person enter the apartment, but saw four individuals come out and stand in front of the door to the apartment. Officers approached the group to determine whether the subject of the warrant was one of the four and if so, to execute the warrant. When an officer shined his flashlight on the subject of the warrant, the subject fled into the apartment and out the back door. One officer pursued the subject to the back of the apartment to assist another officer in apprehending and arresting the subject while two officers detained the three remaining individuals, including Williams. After arresting the subject of the arrest warrant, an officer testified he returned to the front of the apartment to assist the other officers with the detained individuals. As he walked past the apartment, he detected a strong smell of marijuana emanating from the apartment. The officer testified that as he approached the front of the apartment, the other officers were attempting to identify the three individuals. The officer asked the apartment owner if there was marijuana and drug paraphernalia inside the apartment; she admitted there was.

Based on the odor and the apartment owner's admission to the presence of marijuana, the officers arrested Williams for frequenting a place where controlled substances are known to be located. After Williams was handcuffed, he attempted to run away. An officer caught him and searched him incident to arrest. The search yielded a bag of methamphetamine, a bag of marijuana, and drug paraphernalia. The State charged Williams with five crimes: felony possession of a controlled substance, methamphetamine; misdemeanor possession of a controlled substance, marijuana; possession of paraphernalia; frequenting a place where controlled substances are known to be located; and resisting and obstructing officers.

Williams filed a motion to suppress evidence, arguing the evidence was the fruit of an unlawful detention and arrest. Following a hearing, the district court denied the motion, finding the detention and arrest were constitutionally reasonable. Pursuant to a plea agreement, Williams conditionally pleaded guilty to possession of a controlled substance, methamphetamine, and resisting or obstructing officers, reserving his right to appeal the district court's denial of his motion to suppress. All other charges were dismissed. The district court imposed a unified seven-year sentence, with two years determinate, for the possession of a controlled substance charge, and seventy-four days in the county jail, with credit for time served, for the resisting and obstructing charge. Williams timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

### A.   It Was Constitutionally Permissible to Detain Williams During the Execution of an Arrest Warrant

Despite Williams' arguments to the contrary, the district court rejected Williams' argument and relied on *State v. Reynolds*, 143 Idaho 911, 155 P.3d 712 (Ct. App. 2007) to hold that the constitutionally permissible detention of third parties during the execution of a search warrant also applies to the execution of arrest warrants. Williams conceded in the district court that the officers lawfully detained him to determine whether he harbored a fugitive. Given that concession, he acknowledges on appeal he cannot challenge the legality of his initial detention; however, Williams nonetheless argues because the district court erroneously held the officers could detain him simply because they executed an arrest warrant, the basis for Williams' detention could not support the length of his detention.

Although Williams contends both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Williams' claims.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Generally, evidence obtained as a result of an unreasonable search or seizure must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). The district court relied on *Reynolds* in determining the detention of Williams was constitutionally permissible. *Reynolds* held that although detaining an individual during the execution of a search warrant is

3

constitutionally permissible, detaining an individual for whom there is no evidence linking the individual to the premises searched is not constitutionally permissible. *Reynolds*, 143 Idaho at 916, 155 P.3d at 717.

The underlying rationale in *Reynolds* was based on the analysis in *Michigan v. Summers*, 452 U.S. 692 (1981). In *Summers*, police officers encountered an occupant outside of the house subject to a search warrant and detained him while they searched the house. *Id*. at 693. There, the United States Supreme Court addressed the issue of temporarily seizing the owner of a home outside the home when executing a valid search warrant for the home. In tracing the support for the detention of individuals in the context of a search warrant, the Court noted, "some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause." *Id*. at 699. The law enforcement interests are the orderly completion of the search, preventing flight in the event incriminating evidence is found, and the interest of minimizing the risk of harm to the officers, all of which can be achieved "if the officers routinely exercise unquestioned command of the situation." *Id.* at 703.

The Court also noted while the cases relied on to reach the holding were "consistent with the general rule that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause," those cases also demonstrated "the exception for limited intrusions that may be justified by special law enforcement interests is not confined to the momentary, on-the-street detention accompanied by a frisk for weapons involved in *Terry*[1] and *Adams*."[2] *Summers*, 452 U.S. at 700. In deciding whether the case fell within the general rule or the exception, the Court looked both to the character of and the justification for the detention.

In analyzing the character of the detention, the Court found it important that a search warrant carried a judicial determination of probable cause that evidence of criminal activity may be found on the premises; thus, a court had already authorized a substantial invasion of the privacy of the people who resided on those premises. *Id.* at 701. The Court also recognized the detention was unlikely to be exploited because the information was likely to be obtained through the search and not the detention, and the search was done in a private residence rather than a

---

[1]     *See Terry v. Ohio*, 392 U.S. 1 (1968).

[2]     *See Adams v. Williams*, 407 U.S. 143 (1972).

4

public setting, thereby minimizing public stigma. *Id.* The Court also recognized the intrusion was "substantially less" than an arrest. *Id.* at 702.

In defining the justification for the detention, the Court referenced the officers' need to control the scene, protect themselves from attack while they execute a search warrant, prevent the occupants from concealing or disposing of the items described in the search warrant, and ensure the orderly completion of the search. *Id.* at 701-703. Also of concern was the fact that a search for narcotics, because of the nature of the underlying offense, may give rise to sudden violence or the frantic efforts to dispose of evidence. *Id.* at 702.

Ultimately, the Court reasoned, "the connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant." *Id.* at 703-04. Notably, in *Summers*, there was no particular suspicion that the individual posed a specific danger to the officers, yet the risk of potential harm was still considered a sufficiently significant law enforcement interest to justify the detention. And, although the holding in *Summers* is predicated upon the officers being in possession of a valid search warrant rather than a valid arrest warrant for a third party, other courts have applied the rationale of *Summers*--the need to control the scene and to protect officers and others--to find the detention of a third party based on the arrest warrant of another party is constitutionally permissible.

For example, the court in *United States v. Maddox*, 388 F.3d 1356 (10th Cir. 2004) held it was constitutionally reasonable to detain a third party during the arrest of a subject because of the officers' need to take reasonable steps to ensure their safety after, and while making, the arrest. *Id.* at 1362-63. In *Maddox*, a county deputy and two federal marshals went to execute an arrest warrant in a high crime area at a house known to be dangerous. *Id.* at 1358-59. While the marshals were inside executing the warrant, ultimately eight other individuals were detained outside, including Maddox. *Id.* at 1359.

During this time, Maddox's behavior became erratic and the initial deputy asked that Maddox be separated from the group based on the officer's belief that Maddox was dangerous. *Id.* at 1360. After confirming Maddox's identity, the deputy asked Maddox if he had any weapons and Maddox confirmed he did. *Id.* Maddox was then handcuffed and searched, revealing methamphetamine and a scale. *Id.* Maddox was charged with various crimes and moved to suppress the evidence seized from him on the grounds that his detention and

5

questioning violated the Fourth Amendment. *Id*. The motion was denied and Maddox entered a conditional guilty plea, reserving the right to challenge the denial of the motion to suppress. *Id.*

The Tenth Circuit affirmed the denial of the motion, holding Maddox's detention in the carport was constitutionally reasonable based on *Maryland v. Buie*, 494 U.S. 325 (1990). In determining there was no reason to distinguish between a protective search within a home and a "protective detention" outside a home, the court noted:

> We hold that *Buie* applies to both protective searches and protective detentions because the Court's reasoning in *Buie* supports treating protective sweeps and protective detentions similarly. In authorizing officers to protect themselves by making a limited search for potentially dangerous individuals, the Court stated that officers may take "reasonable steps to ensure their safety after, and while making, the arrest." Because the ability to search for dangerous individuals provides little protection for officers unless it is accompanied by the ability to temporarily seize any dangerous individuals that are located during the search, we conclude that detaining potentially dangerous persons for the duration of the arrest qualifies as a "reasonable step[ ] to ensure the [officers'] safety."

*Maddox*, 388 F.3d at 1362 (citations omitted).

Thereafter, the court addressed whether the protective detention was limited to inside a home or might include an area immediately outside the home. In defining where a protective detention would apply, the court relied on the *Buie* Court's "arrest scene" language. *Id.* at 1363. Noting the *Buie* Court held protective sweeps protect officers from potentially dangerous individuals that may be nearby, it was appropriate to consider the reasonable threats posed to the officers when drawing the boundaries of the arrest scene in an individual case. *Id*.

The court found:

> the officer-safety interests at issue in *Buie* are nearly identical to those in play here. As in *Buie*, the arrest of Ms. Page was done inside the residence. As the Court put it, in that instance "[t]he risk of danger . . . [to law enforcement officers is] as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter . . . [and puts them] at the disadvantage of being on [their] adversary's 'turf.' An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings."

*Id.* (citing *Buie*, 494 U.S. at 337). The court found Maddox's detention was justified because he was within the geographical area of the arrest scene, regardless of whether the deputy believed Maddox was armed and presently dangerous. However, the court went on to hold that law enforcement officers may only detain individuals at the scene of the arrest who are not within the "immediately adjoining" area of the arrest if the officers "possess a reasonable belief based on

6

specific and articulable facts" that the individual poses a danger to them. *Maddox*, 388 F.3d at 1362. Thus, where an individual is in an area immediately adjoining the arrestee, the individual may be placed in temporary protective detention even in the absence of probable cause or a reasonable suspicion that the individual poses a threat to officer safety. On the other hand, where an individual is on the arrest scene, but is not in an area immediately adjoining the arrestee, the individual may only be detained when officers possess a reasonable suspicion that the individual poses a danger.

A similar conclusion was issued in *State v. Valdez*, 68 P.3d 1052, 1056 (Utah Ct. App. 2003). There, the officers had a valid arrest warrant for Young. Upon arriving at and entering Young's home, the officers agreed to accompany Young to her bedroom to allow her to change her clothes. *Id.* at 1054. Upon entering the bedroom, the officers saw Valdez lying on the bed, apparently asleep and covered with either a blanket or a coat. *Id*. Because Valdez did not respond to the officer's questions, the officer grabbed Valdez, shook him, and demanded to see his hands. *Id*. During the exchange, the officer asked Valdez for his name and identification. *Id*. Ultimately, the officers identified Valdez and arrested him on an outstanding warrant. *Id*. During the search incident to arrest, the officers found controlled substances and Valdez was charged with various crimes. *Id.* at 1059.

Recognizing the officer did not have any reasonable or articulable suspicion that Valdez was committing or attempting to commit a crime, the court nonetheless found the initial seizure was constitutionally valid, although the subsequent search was not. *Id*. The court held, "the limited seizure of a third party during the execution of an arrest warrant may, under certain very limited circumstances, be permissible without the otherwise necessary showing of facts supporting a reasonable suspicion of criminal activities." *Id*. at 1056. The court relied both on *Summers* and *Maryland v. Wilson*, 519 U.S. 408 (1997) in reaching its decision, concluding, "that under certain circumstances officers may detain a person without reasonable suspicion of criminal activity for the sole purpose of 'exercis[ing] unquestioned command of the situation.'" *Valdez*, 68 P.3d at 1058 (citing *Wilson*, 519 U.S. at 410).

The court then analyzed the totality of the circumstance and determined Valdez's detention was "justified at its inception" as necessary for the officers to exercise command of the situation. *Valdez*, 68 P.3d at 1058. However, the court went on to note Valdez's seizure was limited to the reason justifying it--controlling the scene. *Id.* at 1059. As controlling the scene

did not require any investigation into Valdez's identity, the officer's request for identification exceeded the scope of the reason justifying the initial detention and unnecessarily expanded both the duration and scope of the initial detention. *Id.* As a result, the evidence obtained following the unreasonable expansion was correctly suppressed. *Id.*

In *Way v. State*, 101 P.3d 203, 209 (Alaska Ct. App. 2004), the court adopted similar reasoning in finding it was constitutionally permissible to restrain third parties at a residence when executing an arrest warrant to prevent interference with the arrest. *Id.* However, the court also held that once it was determined the fugitive was not present, Way's continued detention was unreasonable. *Id.* at 210.

The above cases illustrate which factors courts use to determine whether the intrusion on a third party's Fourth Amendment right is constitutionally permissible. First, there must be some judicial determination of probable cause--either for a search warrant or an arrest warrant. Second, the courts look to the nexus between the third party and the subject of the warrant. In determining the nexus, the courts look both to the relationship between the third party and the subject of the warrant and the physical proximity of the third party to the subject of the warrant. Fourth, the court determines what, if any, significant law enforcement interests exist. Fifth, and finally, the court balances the intrusion on the third party's Fourth Amendment right and the law enforcement interests.

Applying the foregoing to the facts in this case, there is no dispute there was a valid arrest warrant or a nexus between Williams and the subject of the warrant. Williams was not someone who just happened to be in the vicinity of the subject at the time the arrest warrant was executed. Instead, according to the testimony, Williams was in the apartment with the subject of the arrest warrant for at least thirty minutes before the officers approached. He was also standing with the subject at the time the subject fled, establishing both a personal relationship with and physical proximity to the subject of the warrant at the time the officer attempted to arrest the subject of the warrant. Additionally, Williams' detention lasted approximately three to four minutes and Williams was not handcuffed during that detention. Within that period of time, the officers attempted to identify Williams and the others.

Also, while only one person entered the apartment during the thirty minutes the officers stood watch, four individuals exited and stood by the door. The officer testified he did not know if there were more individuals in the apartment, if anyone was armed or had access to weapons,

or if any of the three might assist the subject in his escape. These were all reasonable concerns and highlight the significant law enforcement interests in controlling the scene, minimizing the risk to the officers and others, and ensuring the orderly execution of the warrant.

In balancing the intrusion on Williams' Fourth Amendment rights against the significant law enforcement interests, in these circumstances, we hold that Williams' detention was *de minimis* and is analogous to the mere inconvenience of being ordered out of a vehicle. Because it was *de minimis*, it was too small of an intrusion into Williams' liberty to overcome the weighty law enforcement interests of exercising command of the situation, ensuring the safety of the officers and others, and ensuring the orderly conduct of the execution of the arrest warrant. We hold, similarly to other courts, that in these circumstances, a third party may be detained during the execution of a valid arrest warrant. However, Williams' detention was permissible only until the subject of the arrest warrant was safely in custody and the officers detaining Williams knew the warrant was served and the subject was safely in custody. From the record, it appears the officers detaining Williams were not aware the subject was safely in custody until the officer returned to the front of the apartment to assist them. As such, we agree with the district court that Williams' initial detention was constitutionally permissible on this ground.

**B.    Alternatively, it Was Constitutionally Permissible to Detain Williams Until Officers Confirmed or Dispelled Their Suspicion Williams May Have Been Involved in Harboring a Known Felon**

The district court did not address whether it was lawful to detain Williams to investigate whether he harbored a felon. However, where a ruling in a criminal case is correct, though not based upon a correct reason, it still may be sustained upon the proper legal theory. *See State v. Avelar*, 129 Idaho 700, 704, 931 P.2d 1218, 1222 (1997).

Seizures must be based on probable cause to be reasonable. *Florida v. Royer*, 460 U.S. 491, 499-500 (1983). However, limited investigatory detentions, based on less than probable cause, are permissible when justified by an officer's reasonable articulable suspicion that a person has committed, or is about to commit, a crime. *Id*. at 498. The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). Such a detention must be temporary and last no longer than necessary to effectuate the purpose

of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). The scope of the permitted intrusion will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. The brevity of the detention weighs heavily in favor of a finding the detention was reasonable. *See United States v. Sharpe*, 470 U.S. 675, 686-688 (1985) (holding a twenty-minute investigative detention was reasonable under the circumstances).

Here, the officers knew Williams and the other individuals were in the apartment with the subject for at least thirty minutes prior to them walking out of the apartment. The officers also knew the subject fled upon being identified by the officers. These facts are a reasonable articulation connecting Williams to the subject and to the residence--justifying a detention to confirm or dispel the officers' suspicion that Williams committed the crime of harboring a felon. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 871-882 (1975) (reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning to verify or dispel the suspicion related to the purpose of the stop); *State v. Pachosa*, 160 Idaho 35, 368 P.3d 655 (2016). As such, Williams' initial detention under this theory was constitutionally permissible.

## C. Under Either Theory, the Initial Detention Was Not Unreasonably Prolonged

Williams asserts that even if his initial detention was reasonable to investigate whether he harbored a fugitive,[3] the officers detained him longer than necessary because this investigation should have taken seconds, not minutes, to complete. Investigative detentions must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140

---

[3]   Williams conceded in the district court the officers could lawfully detain him to investigate whether he was guilty of harboring a fugitive. Williams argues the State uses the term "fugitive" in the district court and "felon" on appeal. This distinction matters, asserts Williams, because the district court was only presented with the I.C. § 18-2508 citation, there is no evidence to support a claim that Williams harbored a fugitive under I.C. § 18-2508, and therefore, it cannot be an alternate basis for the court's decision. We disagree the articulation of the statute in the State's exhibit in opposition to the motion to suppress is controlling in this context. While the officer used the word "fugitive," it is clear from his testimony he was investigating whether Williams had harbored or protected a known felon pursuant to § 18-2502(2), giving rise to a reasonable suspicion of criminal activity based on the officers' observations. As such, this constitutes an alternative basis on which the district court's holding can be affirmed.

10

Idaho at 181, 90 P.3d at 931; *Gutierrez*, 137 Idaho at 651, 51 P.3d at 465. There is no rigid time limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop. *Sharpe*, 470 U.S. at 685-86; *State v. Hays*, 159 Idaho 476, 480, 362 P.3d 551, 555 (Ct. App. 2015). The investigation following a stop generally must be reasonably related in scope to the circumstances that justified the interference in the first place. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. The purpose of a stop is not permanently fixed, however, at the moment the stop is initiated and during the course of the detention, there may evolve suspicion of criminality different from that which initially prompted the stop. *Parkinson*, 135 Idaho at 362, 17 P.3d at 306. The length and scope of the stop may be lawfully expanded if the detaining officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

1. **The initial detention based on the execution of a search warrant was not unreasonably prolonged**

Williams' initial detention was constitutionally permissible until the subject of the warrant was arrested and such knowledge was communicated to the officers in front of the apartment. It is not clear how this information was communicated from the officer that assisted in the arrest of the subject to the other officers in the front of the apartment. However, it appears from the record the officer was going to relay that information when he returned to the front of the apartment to assist the other officers with the remaining detainees.

En route to the front of the apartment building, the officer smelled marijuana emanating from the building. This provided reasonable, articulable suspicion of a new crime, frequenting, which justified an on-going detention of Williams while the officer confirmed or dispelled the suspicion of criminal activity. Because of the new, independent basis to detain Williams, the initial detention was not unreasonably prolonged by the investigation into new criminal activity.

2. **The initial detention to investigate the crime of harboring a felon was not unreasonably prolonged**

Although Williams argues the questioning to confirm or dispel the suspicion of criminal activity vis-a-vis harboring a felon should only have taken a few seconds, we disagree. The officer testified that when he returned from the back of the apartment building, the other officers were still attempting to establish identity of the individuals, including Williams. In addition to

11

establishing identity, the officers were entitled to attempt to determine the relationship between Williams, the subject of the arrest warrant, and the premises. This questioning would have taken more than a few seconds to accomplish. As such, the questioning was related to the reason for the initial detention, was not unreasonably prolonged, and was constitutionally permissible.

Moreover, during that initial, permissible detention, the officers acquired a new reason to detain Williams--the reasonable suspicion that Williams was guilty of frequenting a place where controlled substances are known to be located, based on the smell of marijuana coming from the apartment and the statements of the owner of the apartment. The officers were then permitted to engage in questioning to confirm or dispel their suspicions about new criminal activity. Given the new basis for an on-going investigatory detention, the initial detention was not unreasonably prolonged.

## D.    The Officers Had Probable Cause for Arrest

Finally, Williams argues the officers did not have probable cause to arrest him for frequenting a place where controlled substances are known to be located, and so the evidence officers seized in the search incident to that arrest must be suppressed.

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). A search incident to a valid arrest is among those exceptions; thus, does not violate the Fourth Amendment proscription against unreasonable searches. *State v. Moore*, 129 Idaho 776, 781, 932 P.2d 899, 904 (Ct. App. 1996). A warrantless arrest is lawful if the arresting officer has probable cause to believe the arrestee has committed a public offense in his presence or has committed a felony not in his presence. I.C. § 19-603. Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person they have placed under arrest is guilty of a crime. *See State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). Probable cause is not measured by the same level of proof required for conviction. *Id.* Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Julian*, 129 Idaho at 136, 922 P.2d at 1062. When reviewing an officer's actions, the court must judge the facts against an objective standard. *Julian*, 129 Idaho at 136, 922 P.2d at 1062. That is, would the facts available to the officer at the

12

moment of the seizure or search, warrant a reasonable person in holding the belief that the action taken was appropriate. *Id*. A probable cause analysis must allow room for mistakes on the part of the arresting officer, but only the mistakes of a reasonable person acting on facts which sensibly led to his or her conclusions of probability. *State v. Kerley*, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct. App. 2000).

Idaho Code § 37-2732 makes it unlawful for any person to be present at any place in which he knows illegal controlled substances are being held for use. The district court found there was probable cause to arrest Williams for frequenting because he was seen coming out of the apartment from which police detected a strong odor of marijuana.

There is substantial evidence to support the district court's finding that the officer had probable cause to arrest Williams. The district court found Williams was present for at least thirty minutes in the apartment, the apartment emanated a strong odor of marijuana, and the apartment owner admitted there was marijuana and drug paraphernalia inside the apartment. Based on these facts, it was reasonable for the officer to believe that Williams knew of the marijuana inside the apartment. As such, there was substantial evidence to support the district court's finding that the officer had probable cause to arrest Williams for frequenting.

## IV.

## CONCLUSION

Accordingly, we hold it was reasonable for officers to detain Williams when they executed an arrest warrant for a third party and the detention was not longer than necessary. Further, Williams' detention was a lawful investigatory detention based on the officers' reasonable articulable suspicion that Williams committed the crime of harboring a felon. Finally, there was substantial evidence in the record to support the district court's finding that the officers had probable cause to arrest Williams, and so the methamphetamine found in Williams' pocket in a search incident to arrest was not the fruit of an unlawful detention or arrest. We affirm the district court's denial of Williams' motion to suppress and judgment of conviction.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.

13