**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51881**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **Filed:  August 29, 2025** |
|  Plaintiff-Appellant, ) | |
| ) | **Melanie Gagnepain, Clerk** |
| v. ) | |
| ) | |
| SHAWNA RAE PENDLETON, ) | |
| ) | |
|  Defendant-Respondent. ) | |
| ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Jason D. Scott, District Judge.

Order granting motion to suppress, <u>reversed</u> <u>and</u> <u>case</u> <u>remanded</u>.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant.  Kale D. Gans argued.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, Boise, for respondent.  Sally J. Cooley argued.

_____

LORELLO, Judge

The State of Idaho appeals from the district court's order granting Shawna Rae Pendleton's motion to suppress.  For the reasons set forth below, we reverse the district court's order and remand the case.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

An officer conducted a traffic stop and contacted Pendleton, the driver and only occupant of the vehicle.  A canine unit officer arrived at the scene with a drug dog and deployed the dog to perform a drug-detection sniff of the vehicle.  On two occasions during the sniff, the drug dog touched the vehicle's door handles with his nose.  Ultimately, the drug dog alerted to the presence of narcotics in the vehicle.  A subsequent search of the vehicle revealed methamphetamine,

1

marijuana, alprazolam, and paraphernalia. The State charged Pendleton with three counts of possession of a controlled substance and one count of possession of drug paraphernalia.

Pendleton filed a motion to suppress, asserting the drug dog's contact with the vehicle doors rendered the search unlawful. The State opposed the motion and argued that the drug dog's contact with the vehicle did not amount to an unlawful search because it did not constitute a trespass. The State also asserted the drug dog's behavior, prior to any contact with the vehicle, established probable cause to search the vehicle. The district court held a hearing on Pendleton's motion to suppress, at which it considered the canine unit officer's testimony and bodycam video, which showed the drug dog's activities. The district court made the following factual findings based on that evidence:

> [The drug dog], attached to a six-foot leash held by [the canine unit officer], exited [the] police vehicle. . . . [The canine unit officer] spent the next few seconds walking [the drug dog] to a spot facing the front of Pendleton's vehicle, about three feet from the front corner of its driver's side. They arrived there . . . , at which point [the canine unit officer] commanded [the drug dog] to sit. [The drug dog] whined briefly [and the canine unit officer] commanded [the drug dog] to begin the sniff. [The drug dog] began moving toward the vehicle's driver's door, making a huffing sound about three times along the way. [The canine unit officer] interpreted [the drug dog's] behavior on the way to the driver's door--especially the huffing, a product of intense, closed-mouth sniffing--as a signal that [the drug dog] had detected a drug odor and was tracking the odor to its source. [The drug dog] stopped near the exterior handle of the driver's door . . . (two seconds after he began moving toward the driver's door), nosed its exterior door handle, and turned his head sharply toward [the canine unit officer]. This head snap, as [the canine unit officer] called it, was [the drug dog's] final alert to the presence of a drug odor.
>
> Nevertheless, [the canine unit officer] commanded [the drug dog] to continue around the vehicle. [The drug dog] exhibited substantially the same behavior on his way to the passenger side's front door as he had exhibited on his way to the driver's door. Upon arriving at the passenger side's front door . . . , [the drug dog] pressed his nose toward that door's exterior handle, likely touching it as well, and exhibited substantially the same final-alert behavior as he had exhibited at the driver's door.

Based on these findings, the district court ultimately granted Pendleton's motion, concluding that the drug dog's contact with the vehicle amounted to intermeddling and was therefore a trespass. The district court also determined that, under the totality of the circumstances, a reasonable person in the officer's position could not have discerned that the drug dog "had tracked a drug odor to the vehicle before [the drug dog] nosed the" door handle. The State appeals.

2

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State contends the district court erred in granting Pendleton's motion to suppress, asserting the drug dog's "minimal contact" with the vehicle was not a search under the Fourth Amendment. The State further argues the district court erred when it determined the drug dog's "actions prior to contacting the [vehicle] were insufficient to establish probable cause." Pendleton responds that the record and applicable law support the district court's findings and conclusions. We hold that the district court erred in granting Pendleton's motion to suppress.

### A. Trespass

In her motion to suppress, Pendleton asserted the drug dog trespassed against her vehicle when the drug dog touched the vehicle's door handles with his nose. According to Pendleton, this specific conduct converted a permissible free-air sniff into an impermissible search as defined in *State v. Dorff*, 171 Idaho 818, 526 P.3d 988 (2023). As a result, Pendleton argued her Fourth Amendment right was violated because the drug dog's sniff was a search that was not authorized by either a warrant or an exception to the warrant requirement. The State disagreed and, despite conceding that the drug dog touched the vehicle's door handles with his nose, the State argued *Dorff* did not require suppression. The State first argued that "nosing exterior door handles" does not constitute a trespass under *Dorff*. The district court disagreed. The district court concluded there was "no denying that [the drug dog] nosed the exterior handle of the" vehicle "to obtain information." Because the contact with the vehicle "was part of [the drug dog's] process of

3

tracking a drug odor to its source," the district court determined it could not be "discounted as merely incidental or inadvertent contact."

On appeal, the State concedes, as it did below, that the drug dog's nose touched the door handles of Pendleton's vehicle but argues the district court erred in finding that a search occurred because "the minimal contact was incidental" and "did not rise to the level of intermeddling with the [vehicle] for information as condemned in *Dorff*." We agree.

A reliable drug dog's sniff of the exterior of a vehicle is not a search under the Fourth Amendment and does not require either a warrant or an exception to the warrant requirement. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *State v. Randall*, 169 Idaho 358, 366, 496 P.3d 844, 852 (2021). In *Caballes*, the United States Supreme Court held that drug dog sniffs are "*sui generis*," meaning they are unique in the Fourth Amendment context. *Caballes*, 543 U.S. at 409. This is because they "disclose[] only the presence or absence of narcotics," which does not implicate any privacy interests. *Id*. Official conduct that does not comprise any legitimate interest in privacy is not a search subject to the Fourth Amendment. *Id*. at 408.

Subsequently, in *United States v. Jones*, 565 U.S. 400 (2012), the Supreme Court drew a distinction between vehicle-related dog sniffs and attaching a GPS tracking device to a vehicle. The Court held that the Fourth Amendment applies where law enforcement "physically occupie[s]" a vehicle "for the purpose of obtaining information" because the Fourth Amendment protects privacy interests in property. *Id*. at 404-05. In *Jones*, the Government attached a GPS tracking device to the defendant's vehicle without a warrant. The Government argued this was not a "search" because the defendant did not have a reasonable expectation of privacy in the undercarriage of his vehicle or in the location of his vehicle as he drove on public streets. *Id*. at 407. The Court disagreed, stating that, "for most of our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effect') it enumerates." *Id*. at 406. Accordingly, the Court held that, while a trespass alone is not a "search," a trespass for the purpose of obtaining information is a search under the Fourth Amendment. *Id*. at 408. The Court held a search occurred because the government physically intruded upon the defendant's vehicle by attaching a GPS tracking device for the purpose of collecting information. *Id*. at 404-05.

4

The United States Supreme Court applied principles from *Jones* in *Florida v. Jardines*, 569 U.S. 1 (2013). In *Jardines*, officers led a drug dog onto the curtilage of the defendant's home without consent, a warrant, or exigent circumstances, and the dog promptly alerted to the presence of narcotics. Based on this alert, the officers obtained a warrant, searched the home, found marijuana plants, and arrested the defendant for drug trafficking. The defendant filed a motion to suppress the evidence discovered pursuant to the warrant. Relying on *Caballes*, the government argued suppression was improper because no search occurred, reasoning that an investigation by a drug dog cannot implicate any legitimate privacy interest. The Court rejected this argument, concluding that a search occurred because "the officers learned what they learned only by physically intruding on [the defendant's] property to gather evidence." *Jardines*, 569 U.S. at 11. Importantly, the analysis in *Jardines* was dependent on precedent establishing that the curtilage of a home, which includes the home's porch, is protected by the Fourth Amendment and, as such, an officer, including the officer's agents, could only access the property in the same manner as an invitee. *Jardines*, 569 U.S. at 7. Because "[t]here is no customary invitation" for an invitee to bring a "trained police dog to explore the area around the home in hopes of discovering incriminating evidence," the officer and the drug dog's conduct was impermissible. *Id.* at 7-9.

In *Dorff*, the Idaho Supreme Court cited *Jones* and *Jardines* in support of its holding that a drug dog's "free air" sniff constitutes a "search" under the Fourth Amendment's property-based test if the drug dog: (1) trespasses against the vehicle; and (2) does so for the purpose of obtaining information about, or related to, the vehicle. *Dorff*, 171 Idaho at 823-24, 526 P.3d at 993-94. The Court reasoned that a "trespass" to chattel occurs at common law when "an actor violates 'the dignitary interest in the inviolability of chattels . . . i.e., those 'interests' that comprise the 'bundle of sticks' (e.g., the right to use, possess, and exclude).'" *Id*. at 826, 526 P.3d at 996 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, PROSSER & KEETON ON THE LAW OF TORTS 85, 87 (5th ed. 1984). The Court stressed that "the physical contact with the chattel must amount to 'intermeddling' for a 'trespass' to occur." *Id*. at 827, 526 P.3d at 997. The Court explained that "intermeddling" represents a more intrusive level of contact, describing it as "the difference between someone who brushes up against your purse while walking by"--which would be innocuous and not a search--"and someone who, without privilege or consent, rests their hand *on* your purse or puts their fingers *into* your purse"--which would constitute a search and implicate

5

the Fourth Amendment. *Id.* "[W]hether the government's conduct amounts to 'intermeddling' is an objective, but often fact-intensive inquiry." *Id.* at 828, 526 P.3d at 998.

In *Dorff*, a three-justice majority held that the drug dog "clearly trespassed" against the defendant's vehicle when the drug dog "jumped up onto the door and planted his two front paws on the door (and then the window) as he sniffed the upper seams of the vehicle." *Id.* at 829, 526 P.3d at 999. Although the duration of time the drug dog had his paws on the vehicle was not dispositive in determining whether his conduct amounted to intermeddling, the Court held that "the seconds that [did] pass while [the drug dog] stood on, and occupied," the defendant's vehicle--without privilege or consent--were "enough to objectively constitute a wrongful trespass against, and intermeddling with," the vehicle and the defendant's right to exclude. *Id.*

The district court concluded "fidelity to *Dorff* requires suppression of evidence of the contraband at issue here." In particular, the district court noted the circumstances in this case are "indistinguishable from *Dorff*'s purse example." The district court's conservative reading of *Dorff* is understandable given the "murky and uncertain legal waters" surrounding dog sniff cases. *See Dorff*, 171 Idaho at 829, 526 P.3d at 999 (Moeller, J. dissenting) (stating that, "unfortunately, the majority's decision will return us to the murky and uncertain legal waters from which we just extricated ourselves"). However, we conclude that, while *Dorff* may be dispositive in cases with the same facts, the facts in this case are distinguishable and fidelity to well-established Fourth Amendment principles compels a different result than the one reached in *Dorff*.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. As the text of the amendment indicates, and as the United States Supreme Court has held, "the ultimate touchstone of the Fourth Amendment is reasonableness." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). The reasonableness touchstone is precisely why there are exceptions to the Fourth Amendment's warrant requirement, and it is what informs the reasonable expectation of privacy inquiry when assessing the scope of the amendment's protections. *See id.* (explaining that, "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions"); *see also State v. Rebo*, 168 Idaho 234, 238, 482 P.3d 569, 573 (2020) (explaining that the Fourth Amendment "also protects certain expectations of privacy, as long as society is willing to recognize such expectations as

reasonable"). These principles are the pillars upon which the automobile exception rests. The United States Supreme Court has described the rationale for the automobile exception as follows:

> The exception has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation. These two requirements for application of the exception ensure that law enforcement officials are not unnecessarily hamstrung in their efforts to detect and prosecute criminal activity, and that the legitimate privacy interests of the public are protected. Applying the vehicle exception in these circumstances allows the essential purposes served by the exception to be fulfilled, while assuring that the exception will acknowledge legitimate privacy interests.

*California v. Carney*, 471 U.S. 386, 394 (1985) (footnote omitted).

The trespass principles introduced in *Jardines* and *Dorff* do not modify the rationale for the automobile exception or the reasonableness requirement that is the touchstone of the Fourth Amendment. Nor do those trespass principles change the reason such Fourth Amendment inquiries are undertaken in the first instance, i.e., to determine whether evidence should be suppressed. The Fourth Amendment's exclusionary rule is a judicially created remedy aimed at deterring police misconduct. *United States v. Leon*, 468 U.S. 897, 906 (1984). Idaho has an independent exclusionary rule pursuant to Article I, Section 17 of the Idaho Constitution, which serves multiple purposes, including deterring law enforcement from acting unreasonably in obtaining evidence. *State v. Plata*, 171 Idaho 833, 842, 526 P.3d 1003, 1012 (2022); *State v. Guzman*, 122 Idaho 981, 1012, 842 P.2d 660, 842 (1992). The other purposes include: (1) "provid[ing] an effective remedy to persons who have been subjected to an unreasonable government search and/or seizure"; (2) "encourag[ing] thoroughness in the warrant issuing process"; (3) "avoid[ing] having the judiciary commit an additional constitutional violation by considering evidence which has been obtained through illegal means"; and (4) "preserv[ing] judicial integrity." *Plata*, 171 Idaho at 842, 526 P.3d at 1012; *see also Guzman*, 122 Idaho at 993, 842 P.2d at 672). Outside the warrant process, the underlying point of the exclusionary rule for both the Fourth Amendment and Article I, Section 17 is effectively the same--deterring police misconduct and providing a remedy for unreasonable searches or seizures.

The drug dog's conduct in this case did not constitute a search, was not unreasonable, and did not warrant suppression of the evidence. A Fourth Amendment "search" did not occur because,

7

unlike in *Dorff*, the drug dog in this case did not physically occupy Pendleton's vehicle.[1] Instead, the evidence in the record shows that the drug dog touched his nose on the door handles of Pendleton's vehicle while conducting a sniff. Accordingly, the drug dog's physical contact with Pendleton's vehicle was the kind of "contact to the exterior surface of chattel" that occurs during "every-day type commotions," which, as the Idaho Supreme Court has recognized, is "insufficient" to constitute intermeddling and does not implicate the Fourth Amendment. *See Dorff*, 171 Idaho at 827, 526 P.3d at 997.

The district court's contrary conclusion was based on the purse analogy in *Dorff*. But, the purse analogy is not helpful as it relates to a dog. "[S]omeone who, without privilege or consent, rests their hand *on* your purse or puts their *fingers* into your purse" in a manner that is not incidental or consistent with "every-day type commotions" is only a trespass if done with the intent to obtain information. *See Jones*, 565 U.S. at 408 n.5 (noting a "[t]respass alone does not qualify" as a search, "but there must be conjoined with that what was present here: an attempt to find something or to obtain information"). The intent requirement makes sense, particularly in deciding whether the conduct was unreasonable such that it should result in some remedy owed to the purse-owner. For example, if the intent was to keep the owner's purse from falling off a table or picking up the purse and handing it to someone who left it in a booth at a restaurant, the conduct would be reasonable, not punishable. The difference between a human actor and a dog is that the former can be called to testify and answer questions about intent and the latter cannot; hence, it is necessary to make distinctions between the two when conducting a Fourth Amendment analysis. *See State v. Bauler*, 8 N.W.3d 892, 906 (Iowa 2024) (noting "a dog is not the same as a human" and, as such, "applying common law concepts derived from human interactions in an anthropomorphic manner to dog sniffs makes no sense"); *cf. State v. Christensen*, 166 Idaho 373, 377, 458 P.3d 951, 955 (2020) (recognizing a "dilemma arises in attempting to apply to children evidentiary rules which were drafted with adults in mind" and to remediate the dilemma, courts

---

[1] The drug dog's brief contact with the vehicle in this case also distinguishes this case from *Randall*, 169 Idaho at 368, 496 P.3d at 854 (holding drug dog's interior sniff of vehicle was a search), and *State v. Howard*, 169 Idaho 379, 382-83, 496 P.3d 865, 868-69 (2021) (holding that "when a law enforcement drug detection dog intrudes, to any degree, into the interior space of a car during a drug sniff, without express or implied consent to do so, a search has occurred under the Fourth Amendment").

should consider the totality of circumstances surrounding statements made by young children to determine whether the statements satisfy the medical diagnosis or treatment hearsay exception). Since the touchstone of the Fourth Amendment is reasonableness, reasonableness should guide our jurisprudence on what is and is not a proper dog sniff.

With respect to reasonableness, we note that, although the United States Supreme Court in *Jones* held that placing a GPS tracker on a vehicle constituted a search for purposes of the Fourth Amendment, the Court explicitly did not address whether the search was reasonable. *See Jones*, 565 U.S. at 413 (declining to address government's alternative argument that the search was reasonable because that issue was not preserved). However, the Supreme Court did address reasonableness in *Jardines*, explaining that, in light of the privacy interest in a home--"the first among equals" under the Fourth Amendment--law enforcement, accompanied by a drug detection dog, unreasonably intruded on the defendant's property by exceeding the "leave" authorized to an invitee. *See generally Jardines*, 569 U.S. 1. The drug dog's contact with the vehicle's door handles is far removed from the concerns at issue in *Jones* and *Jardines*. Indeed, the drug dog was doing precisely what the United States Supreme Court and Idaho appellate courts have long-held is constitutionally permissible--he conducted a free air sniff for the purpose of detecting the presence of narcotics in an "effect" (a vehicle) that is constitutionally less protected than a home. That the drug dog made brief contact with the vehicle's door handles in the process does not render the conduct unreasonable. In fact, the brief contact is consistent with the drug dog's training--to track the scent as close as possible to its source. It is hardly surprising that the dog would bump the door handle as part of this process. And, there is no evidence that anything about that brief contact actually resulted in any information, much less information that could make or break the probable cause determination. That the contact occurred as "part of [the drug dog's] process of tracking a drug odor to its source," does not mean the contact was not incidental.

Because there was not a search, and because the drug dog's conduct was reasonable, there is no misconduct to deter, and no remedy is required unless the search was conducted without probable cause. For the reasons explained below, we conclude the search of Pendleton's vehicle pursuant to the automobile exception was supported by probable cause.

9

**B.      Probable Cause**

The State argues that probable cause existed to search Pendleton's vehicle and that probable cause existed prior to the drug dog's physical contact with the driver's side door handle. The district court rejected the State's arguments. The district court reviewed the canine unit officer's testimony and bodycam video and determined that "the sniff here was brief" and that the drug dog "nosed the door handle almost immediately after the sniff began." Specifically, the district court found that the drug dog "nosed the exterior handle of the driver's door" and gave a "final alert" about "two seconds after" the canine unit officer commanded the drug dog to begin the sniff. According to the district court, "nothing that happened during those two seconds, before [the drug dog] nosed the door handle, warranted a conclusion that [the drug dog] had tracked a drug odor to the vehicle." On appeal, the State contends the district court erred in concluding the search of Pendleton's vehicle was unsupported by probable cause. We agree.

Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person is guilty of a crime. *State v. Williams*, 162 Idaho 56, 66, 394 P.3d 99, 109 (Ct. App. 2016). Probable cause is not measured by the same level of proof required for conviction. *Id*. Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Williams*, 162 Idaho at 66, 394 P.3d at 109. When reviewing an officer's actions, the trial court must judge the facts against an objective standard. *Williams*, 162 Idaho at 66, 394 P.3d at 109. That is, would the facts available to the officer, at the moment of the seizure or search, warrant a reasonable person in holding the belief that the action taken was appropriate. *Id.*

Pendleton did not challenge the reliability of the drug dog, nor did she present any evidence that the dog's alert behavior was illegitimate.[2] There is also no dispute that the automobile

---

[2]      Pendleton cites the Idaho Supreme Court's opinion issued in the prior appeal in this case. *State v. Pendleton*, 172 Idaho 825, 537 P.3d 66 (2023). The issue in that appeal was "whether a defendant has a right to compel the production of records regarding the past performance of a drug dog and the K-9 officer with whom the dog works." *Id.* at 827, 537 P.3d at 68. Pendleton sought the information "to aid her expert witness and prepare a potential motion to suppress" and, "[m]ore specifically," to establish whether the drug dog "has been preconditioned to alert on all vehicles-- a reliability challenge that requires an examination of how [the dog] typically behaves in the field."

exception to the warrant requirement would justify a search if there was probable cause to believe Pendleton's vehicle contained controlled substances. As to probable cause, the parties only dispute whether probable cause existed prior to the drug dog touching the door handle with his nose. In our view, the fact that the drug dog's nose touched the door handles is of no moment because, for the reasons already explained, the touching was not a search. Thus, even if the nose-touching contributed any information, that information would be appropriate to consider. That said, there is no evidence that the nose-touching provided information, other than that was as close as the dog could get to the source of the odor detected. This does not, however, mean the nose-touching was *necessary* to the probable cause determination. Moreover, even if there was evidence that the dog gained some additional information as a result of the nose-touching that was relevant to the totality of information contributing to probable cause, and even if that touching was improper, Fourth Amendment principles would simply require exclusion of the unlawfully obtained information from the probable cause calculation. *See State v. Bunting*, 142 Idaho 908, 914, 136 P.3d 379, 385 (Ct. App. 2006) (explaining principle that, "when tainted evidence has been relied upon for the issuance of a warrant," an appellate court "must determine whether the remaining information presented to the magistrate, after the tainted evidence is excluded, contains adequate facts from which the magistrate could have concluded that probable cause existed for issuance of the search warrant").

Pendleton seems to suggest that the nose-touching was critical because that was the only basis for concluding narcotics were inside her vehicle. We are not persuaded. There is no evidence in the record that supports a conclusion that the brief nose-touching was the only basis for leading a person of ordinary care and prudence to believe or entertain an honest and strong presumption the narcotics were inside the vehicle. Rather, the *entirety* of the dog's behavior supported the probable cause determination vis-à-vis Pendleton's vehicle. *See State v. Ricks*, 173 Idaho 74, 77, 539 P.3d 190, 193 (Ct. App. 2023) (holding that probable cause may be based on a reliable drug dog's general alert behavior). The logical extension of Pendleton's argument would mean that

---

*Id.* at 831, 537 P.3d at 72. Pendleton prevailed, and the Idaho Supreme Court agreed that she was entitled to the information and remanded the case. *Id.* at 832-38, 537 P.3d at 73-79. On remand, Pendleton did not present any evidence, expert or otherwise, that those records established that the drug dog was not reliable or that his alert was only a "preconditioned" response.

11

probable cause would exist if a drug dog stopped one millimeter shy of touching a car (in an effort to get closest to the source), but probable cause would be defeated if a dog touched the door with his nose, even absent evidence that the nose-touching provided any information. We decline to adopt a legal standard that depends on millimeters that would require law enforcement officers in real time to get close enough to detect whether a brief touch occurred during the sniff or would require district courts to conduct freeze-frame analytics of on-body video footage after the fact.

A review of the record in this case shows there was probable cause to support the search of Pendleton's vehicle for narcotics. At the suppression hearing, the canine unit officer testified about his training and experience working with the drug dog. Specifically, the canine unit officer testified that both he and the drug dog "were POST certified in drug detection and . . . criminal apprehension." The canine unit officer had been working with the same drug dog for "three and a half years" and completed a "combined 400 hours" of training consisting of "160 hours of POST training" in drug detection and "240 hours" in criminal apprehension. The canine unit officer testified that he became familiar with the drug dog's behavior based on their training and experience. The district court found the canine unit officer's testimony "generally credible."

The canine unit officer also testified about the significance of the drug dog's behavior during the sniff of Pendleton's vehicle. Upon receiving the canine unit officer's command to begin the search, the drug dog "began to pull towards the driver's door." The canine unit officer "could hear [the drug dog] sniffing rapidly with his nose" and noted that the drug dog "quickly began to direct and concentrate that rapid sniffing towards the driver's door handle." While doing so, the canine unit officer noted that the drug dog "pressed his nose into the door handle and, then, performed a head snap." After this "first alert," the canine unit officer commanded the drug dog to continue the sniff, prompting the drug dog to "quickly move around the rear bumper of the vehicle." Again, the canine unit officer "could hear [the drug dog] rapidly sniffing," this time "towards the front passenger door." As the drug dog approached, the canine unit officer noted that the drug dog "began to direct and concentrate that rapid sniffing towards the door handle and, again, continue that sniffing as he presse[d] his nose in the door handle" before performing "another head snap." According to the canine unit officer, these behavioral changes exhibited by the drug dog were consistent with "the way he inherently alerts" and indicated to him that the drug dog had "already quickly sourced odor at that point" and was "going almost directly to that

12

source." The canine unit officer's testimony provided objective evidence on the reliability and significance of the drug dog's behavioral changes. Consistent with caselaw, this evidence from a trained and reliable drug dog handler was a sufficient basis for probable cause.

Because the evidence in the record, including the canine unit officer's bodycam footage and testimony, established that the drug dog's behavior constituted a general alert to the presence of controlled substances prior to any physical contact with the vehicle, the district court erred in finding that the officers lacked probable cause to search Pendleton's vehicle.

## IV.

## CONCLUSION

The district court erred in finding that a search occurred under the Fourth Amendment when the drug dog's nose touched the vehicle's doors because the contact was incidental and innocuous and did not constitute a trespass. The district court also erred in concluding the officers lacked probable cause to search Pendleton's vehicle. Accordingly, the district court erred in granting Pendleton's motion to suppress. Consequently, we reverse the district court's order granting the motion to suppress and remand the case.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.

13